[S. F. No. 12987. In Bank.—December 31, 1928.]

FRANK EDSON et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JULIO LANDLIN, Respondents.

J. E. Pemberton and Daniel W. Burbank for Petitioners.

G. C. Faulkner for Respondents.

SHENK, J.—This proceeding was brought by Frank Edson, as employer, and by State Compensation Insurance Fund, as his insurance carrier, to review and annul an award of the Industrial Accident Commission.

Julio Landlin was a laborer and the employee in whose favor the award was made. On September 6, 1926, Landlin suffered an injury by being struck in his left eye by a flying nail. That the injury arose out of and in the course of the employment is not questioned. Prior to and at the time of the injury Landlin was afflicted with a nonindustrial disease by reason of which he had permanently lost 30/50ths of the sight of each eye. On May 5, 1927, he filed an application for an adjustment of his claim with the respondent Commission. On October 31, 1927, the Commission made its finding wherein it was found that the applicant had sustained an injury "when he was struck in the left eye by a flying nail, the vision of the left eye having been previously impaired." It was further found in paragraph 2 as follows: "2. Said injury caused permanent disability consisting of reduction of vision of left eye to counting fingers at one foot, correctible to 10/200 with moderate blurring; loss of near vision, correction being impracticable due to loss of lens, pre-existing vision of eye being assumed to be 20/50, which for applicant's age and occupation constitutes a permanent disability of nine per cent, entitling him to $9.26 a week for 36 weeks, in the total sum of $333.36, which has been paid, based upon weekly wages of $15.00."

On November 18, 1927, this court pronounced its judgment in the case of *Ford Motor Co.* v. *Industrial Acc. Com.,*

202 Cal. 459 [261 Pac. 466], wherein certain provisions of the Workmen's Compensation Act (Stats. 1917, p. 831), involved in the present proceeding were commented upon. Prior thereto this court had, on rehearing, decided the case of *Liptak* v. *Industrial Acc. Com.*, 200 Cal. 39 [251 Pac. 635]. Three days after the decision in the Ford Motor Company case the applicant herein filed with the Commission a petition for a rehearing on the ground that the prior award was inadequate. The rehearing was granted and on January 23, 1928, the Commission made its second finding and award wherein it amended paragraph 2 of its prior award to read as follows: "2. Said injury caused permanent disability consisting of reduction of vision of left eye to counting fingers at one foot, correctible to 10/200, with moderate blurring; loss of near vision, correction being impractical due to loss of lens; reduction of vision of right eye to 20/50, which disability, for the applicant's age and occupation is equal to 59¼% of total disability, entitling him to a weekly payment of $9.26 for 237 weeks, amounting to the total sum of $2,194.62, on account of which the applicant has been paid the sum of $333.36. Said payments are based upon a weekly wage of $15.00."

On February 21, 1928, the petitioners filed in the district court of appeal their application for a writ to review and annul the second award. The petition was denied by the district court of appeal without opinion. An application for a hearing in this court was granted on May 21, 1928. Prior to the order granting the hearing the respondent Commission filed a supplemental answer confessing its uncertainty as to the correctness of the conclusions reached in the award now under review and expressed a desire that this court definitely construe the powers of the Commission under the facts presented.

The facts are undisputed. Prior to the injury of September 6, 1926, Landlin had permanently lost 30/50ths of the sight of each of his eyes due to a nonindustrial disease. By the industrial injury he was caused to lose an additional 17½/50ths of the sight in his left eye. The injury did not affect his right eye. The additional loss of vision caused by the injury to the left eye was rated originally at nine per cent and the award was made for $333.36. After rehearing the Commission found in effect that the injury caused per-

manent disability consisting of all of the reduction of vision in the left eye and all of the reduction of vision in the right eye and found that these losses equaled fifty-nine and one-fourth per cent of total disability. Upon these findings the Commission made an award for the payment "of compensation for permanent disability in the total sum of $2,194.62." It will thus be seen that approximately five-sixths of the permanent disability for which the award was made was for a permanent loss pre-existing the industrial injury and resulting from a nonindustrial disease.

The question for determination may fairly be stated as follows: Does any provision of the Workmen's Compensation Act require or permit the respondent Commission to award compensation for that portion of permanent disability which existed prior to the industrial injury and was wholly caused by nonindustrial disease?

Generally, the purpose of the Workmen's Compensation Act is to provide and require industrial responsibility for industrial injury. In other words, it was enacted to impose a charge on industry for losses caused by industry. This court said in *Union Iron Works* v. *Industrial Acc. Com.,* 190 Cal. 33, at page 39 [210 Pac. 410, 413]: "The underlying principle upon which the Workmen's Compensation Act rests is, as its title indicates, the providing of compensation to an employee for injuries resulting from his employment. It emanates from the economic thought that personal injury losses incident to an industry is a part of the costs of production to be borne, just as the depreciation and replacement of a machine is borne, by the industry itself, which compensation will be included in the cost of the product of the industry. (*Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686 [151 Pac. 398].)"

The portions of the act pertinent to the case in hand will be noted.

Section 3 of the act defines the terms used in the act "unless a different meaning is plainly required by the context." Subdivision (4) of that section provides: "The term 'injury' as used in this act, shall include any injury or disease arising out of the employment. . . . " No question of aggravation of any disease existing prior to the injury involved herein arises in this case. Consequently the remainder of the subdivision is inapplicable to the facts.

Section 9 (b) 2 (7) provides: "In determining the percentage of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market."

Section 9 (b) 2 (10) provides: "The percentage of permanent disability caused by any injury shall be so computed as to cover the permanent disability caused by that particular injury without reference to any injury previously suffered or any permanent disability caused thereby."

Section 11 (f) provides: "The fact that an employee has suffered a previous disability, or receives compensation therefor, shall not preclude him from compensation for a later injury, . . . but in determining compensation for the later injury, . . . his average annual earnings shall be fixed at such sum as will reasonably represent his annual earning capacity at the time of the later injury."

From the foregoing the purpose of the act with reference to the effect of prior injury or disease is obvious. Industry takes the employee as it finds him at the time of the employment. He may have suffered a prior injury, either industrial or nonindustrial. His capacity to serve may have been reduced by an industrial or a nonindustrial disease. It may safely be said that a small proportion of humans are perfect physically and mentally. Disease and accident during childhood and the diseases and habits of adults having no relation to any particular employment result in disability or impaired capacity to work in the sphere of both physical and mental labor. For such disability or impaired capacity the Workmen's Compensation Act was not intended to provide compensation. The plain intent of the act as framed was to charge the employer, and through him industry as a whole, with the loss accruing to the employee and resulting from his employment, i. e., arising out of and in the course of his employment. If the employee has suffered permanent disability by injury or disease prior to the injury for which compensation is sought the statute requires that the percentage of disability on account of the latter injury be computed without reference to any injury previously suffered or any permanent disability caused thereby, except

that in the case of aggravation of a pre-existing disease such proportion of the disability due to the aggravation of the prior disease as may be reasonably attributed to the later injury may be considered. And this is true as to pre-existing injury or disease, either industrial or nonindustrial.

If the pre-existing injury or disease be nonindustrial, the employment has no relation to the disability caused thereby and the employer or the industry is not chargeable with compensation therefor excepting, as above noted, in the case of aggravation of a pre-existing disease. If the prior injury or disease be industrial, the terms of the act import a presumption that it has theretofore been compensated for. Therefore, when the term ''injury'' was defined in section 3 (4) of the act to ''include any injury or disease arising out of the employment,'' the legislature had in mind the injury or disease for which compensation was provided in the act. But where the term ''injury'' was used in section 9 (b) 2 (10) in the phrase ''without reference to any injury previously suffered,'' the context plainly requires that the term apply to a pre-existing nonindustrial as well as to a pre-existing industrial injury or disease. Any other construction of the language of the act would result in a palpable absurdity. If the word ''injury'' in section 3 (4) of the act be given the same meaning when last employed in section 9 (b) 2 (10) and without regard to the context, the result would be that in computing the percentage of permanent disability caused by the particular industrial injury under consideration the Commission must exclude the effect of a prior industrial injury, but by inference might include disability on account of a prior nonindustrial injury or disease. Such was not the intention of the statute.

When, therefore, the Commission, in computing the percentage of permanent disability of Landlin caused by the industrial injury, included any percentage of such disability attributable to the prior injury or disease, it proceeded in a way unauthorized by the statute. Likewise, there was no justification for the inclusion in the award of nearly five-sixths or any amount as compensation for the disability attributable solely to the prior injury or disease and for which the employment was in nowise responsible.

The action of the Commission, as indicated by the dates of its particular orders hereinbefore noted, together with the

dates of the judgments of this court in the Liptak and the Ford Motor Company cases, and the attitude of counsel for the Commission in the present matter, all point to the conclusion that in making its second award the Commission was guided by what it conceived to be the compelling force of our decisions in the two cases mentioned. It is due to the Commission to say that prior to the decision in the Liptak case the Commission had consistently applied a method of computation in permanent disability cases consistent with the views herein expressed and likewise, prior to said decision, consistently contended that the general rule of computation should apply to Liptak's case. It was not until after the decision in the Ford Motor Company case that it revised its method of computation to conform to what is believed to be the effect of those two cases on the proper method to be applied in the present case. And it is now frankly conceded by counsel for the Commission that the application of the statute to the present case is an amplification and extension of the doctrine of the Liptak case.

We are of the view that the doctrine of the Liptak case is not applicable to the case in hand. That case involved compensation for total loss of the sight enjoyed by the applicant immediately prior to the time of the injury for which compensation was sought. Section 9 (b) 2 (9) of the act, relating to total loss of sight, played an important part in the determination of that case and it was definitely stated in the opinion that because of an apparent ambiguity in the language of the statute relating to cases of complete loss of sight, the point involved could be decided either way. Applying the provisions of section 69 (a) of the act, requiring a liberal interpretation of the act in favor of the employee, the court resolved the ambiguity in favor of the applicant for compensation. The doctrine of the Liptak case may not, therefore, reasonably be extended to cases which do not involve total loss of sight.

Nor does the Ford Motor Company case have the effect of which the Commission was apprehensive. The conclusions arrived at in that case are entirely consistent with our present conclusions. In that case the applicant had suffered a prior industrial injury. He was compensated for that injury and was re-employed by the same employer. He

suffered another injury arising out of and in the course of his employment. It was decided in that case that the percentage of the total disability caused by the second injury must be computed without reference to the prior injury. The award in that case was annulled for other reasons. Our conclusions in this case are entirely in line with the reasoning and the result attained in that case.

From what has been said it follows that the award under review was and is unjustifiable on the undisputed facts. The award is, therefore, annulled and the cause remanded to the respondent Commission for further proceedings not inconsistent with the views herein expressed.

Richards, J., Seawell, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.