[L. A. No. 23298.   In Bank.   May 27, 1955.]

SUBSEQUENT INJURIES FUND OF THE STATE OF CALIFORNIA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and MARY M. HARRIS, Respondents.

Edmund G. Brown, Attorney General, Donald D. Stoker and W. B. Thayer, Deputy Attorneys General, for Petitioner.

Everett A. Corten, Benjamin L. Wolfe and T. Groezinger for Respondents.

SCHAUER, J.—This controversy concerns the apportionment of liability between an employer and the Subsequent Injuries Fund. (Lab. Code, §§ 4750-4755.) The employe, Mrs. Harris, before her industrial injury had a permanent partial disability consisting of impairment of the motion of the spine, the result of tuberculosis of the spine which had become quiescent. The industrial injury from a fall, said to be "negligible" in itself, caused aggravation of the previously quiescent disease and, following various courses of treatment including surgery, a complete paralysis of both legs and of the body up to the waist, developed. An original award of 100 per cent permanent disability against the employer was annulled by the District Court of Appeal (*Goodwill Industries v. Industrial Acc. Com.* (1952), 114 Cal.App.2d 452, 459-460 [250 P.2d 627]) on the ground that "at the time of the [industrial] accident . . . Mrs. Harris had a partial permanent disability and impaired capacity to work resulting from a previous nonindustrial disease," and that the employer was en-

titled to an apportionment of the 100 per cent rating as between the industrial and the nonindustrial aspects of the disability. The Subsequent Injuries Fund, which up to that time had not been a party, was thereafter joined as a defendant before the Industrial Accident Commission, and following a new hearing the commission rated the preexisting nonindustrial disability at 46¼ per cent and the total combined disability as 100 per cent. The 46¼ per cent was then deducted from the 100 per cent to arrive at a disability of 53¾ per cent attributable to the industrial injury. An award against the Subsequent Injuries Fund was made for the 46¼ per cent and against the employer for the 53¾ per cent.

The Fund contends that the commission erred in its method of apportioning the disabilities, and that rather than first rating and then deducting the preexisting disability from the combined disability to arrive at the percentage of industrially caused disability, the industrially caused disability should first be rated and then deducted from the combined disability to arrive at the disability rating chargeable to the Fund.[1] We have concluded that the position of the Fund in

---

[1]The Fund illustrates the claimed materiality of the differing methods by several examples, including the following:

"(2) Assume a man who has but one eye suffers the loss of both legs in a subsequent industrial injury:

"In summary, if we follow the formula required by the Harris decision, the Subsequent Injuries Fund is . . . charged with 25%, and the employer with the remaining 75%.

"On the other hand, if the proper formula is followed, we note that the loss of both legs is rated by the Rating Schedule (page 3) as 100% disability. Subtracting from our hypothetical man's present combined 100% disability the 100% disability attributable to the loss of both legs in the industrial injury, we would have a remainder of zero. The Subsequent Injuries Fund would have no liability, and the employer would bear 100% of the liability.

"(3) Assume that a man with but one eye suffers the loss of his other eye in a subsequent industrial injury:

"Separately rated, the pre-existing loss of one eye would rate 25% standard, and so would the subsequent loss of the other eye rate 25%. . . . According to Labor Code Section 4662, Subsection (a), our hypothetical man ·is conclusively presumed totally (100%) disabled, as he has lost both eyes. According to Section 4750 of the Labor Code 'The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed.' (Emphasis added.) According to this last quoted section, the employer should only be charged with 25%. However, if the formula of the Harris case, and the formula applied in the instant case, is applied to our hypothetical case, the employer would be charged with 75%, and the Subsequent Injuries Fund with 25%."

Our quoting of the examples suggested does not imply concurrence with the inferences and conclusions the Fund suggests should follow therefrom.

this respect is correct, but it does not appear that the Fund is correct in its further contention that it follows that no award may be made against it.

Section 4751 of the Labor Code provides that "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 per cent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation [from the Subsequent Injuries Fund] for the remainder of the combined permanent disability existing after the last injury. . . ."

The factors which contribute to the combined disability in the present case are (1) the preexisting disability caused by the nonindustrial disease; (2) the disease itself, which at the time of the industrial injury was quiescent; (3) disability mechanically caused by the industrial injury (negligible); and (4) disability caused by the industrial injury's aggravation of the preexisting disease.

As to the latter type of disability and the "compensation due [therefor] under this code" as mentioned in section 4751, section 4663 of the Labor Code provides that "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributable to the injury."

Under section 4750 of the same code, "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

Thus, as expressed in *Edson* v. *Industrial Acc. Com.* (1928), 206 Cal. 134, 138-139 [273 P. 572], "If the employee has suffered permanent disability by injury or disease prior

to the injury for which compensation is sought the statute requires that the percentage of disability on account of the latter injury be computed without reference to any injury previously suffered or any permanent disability caused thereby, except that in the case of aggravation of a preexisting disease such proportion of the disability due to the aggravation of the prior disease as may be reasonably attributed to the later injury may be considered. . . ."

■ It follows from these rules that the Fund is correct in its position that its liability should not be fixed by rating the preexisting disability alone and apart from the subsequent industrial injury. ■ On the other hand it would seem that neither does the statute, when its several pertinent parts are read together, contemplate that in a case such as this (where the later disability is a product of prior disease, an industrial injury aggravating the prior disease, and surgical treatment for the condition growing out of the combination of prior disease and industrial injury) the commission must attempt to rate the disability caused by the later industrial injury entirely independently of the prior existing disease and so fix the employer's liability without respect to either the combined disability or the previously existing disability or impairment. Rather, the more reasonable and workable practice, and one conforming with the intent of the statute, appears to be that which the commission seems to have consistently followed in aggravation cases, viz: to rate the combined disability (whether it be 70 per cent, 80 per cent, 100 per cent, or some other percentage) and then (as provided by section 4663) assign a proportion (such as ½, ⅔, 80 per cent, etc.) of the combined disability to the later injury and a correlative proportion to the preexisting disability or impairment. (See, e.g., 19 Cal. Comp. Cases (1954) 29-30, 143, 149, 166-167, 173-175; 18 Cal. Comp. Cases (1953) 242-243; 17 Cal. Comp. Cases (1952) 131; 16 Cal. Comp. Cases (1951) 308-309; 15 Cal. Comp. Cases (1950) 169; 11 Cal. Comp. Cases (1946) 225-226, 238-239; 3 Cal. Comp. Cases (1938) 77-78; 2 Cal. Comp. Cases (1937) 67-68.) This was also the method followed by the commission and approved by this court in Tanenbaum v. Industrial Acc. Com. (1935), 4 Cal.2d 615, 616 [52 P.2d 215], in which the employe's permanent disability, rated at 32¾ per cent, was found to have been "partly caused by preexisting dormant disease [arthritis] and partly by said [industrial] injury," and an

apportionment was made of 33⅓ per cent to preexisting disease and 66⅔ per cent to the industrial injury.

Although the commission attempts to defend the method of apportionment it followed in this case,[2] rather than to suggest the method described above and followed by it in the numerous instances listed, it appears that the commission was influenced by the statement of the District Court of Appeal, when that court annulled the prior award (*Goodwill Industries* v. *Industrial Acc. Com.* (1952), *supra,* 114 Cal.App. 2d 452, 460), that "the commission erred in finding that the [industrial] injury . . . caused total disability and in failing to determine and deduct the percentage of total disability allowable to applicant's condition at the time of the injury." However, that court was not then considering the method of apportionment which should be adopted as affecting the allocation of liability between the employer and the Fund but, rather, the question of whether the evidence required some proration of the disability as between the industrial injury and the prior existing disease, as required by the provisions of section 4663, Labor Code; consequently, the court's statement is not to be regarded as delineating any particular method of apportionment either as applicable to the question now at hand or for any other purpose.

Insofar as concerns a combined disability resulting from a later industrial injury (such as loss of the left eye) when added to a prior independent disability (such as loss of the right eye), the method of apportionment advocated by the Fund appears to be correct. In the suggested example, the loss of each eye independently would rate 25 per cent, or a total of 50 per cent. Under subdivision (a) of section 4662 of the Labor Code, however, one who has lost both eyes is conclusively presumed 100 per cent permanently disabled. Thus, deducting the 25 per cent rating for the loss of the second eye from the 100 per cent combined rating would leave a 75 per cent rating chargeable to the Fund. This was the method seemingly followed by the commission and approved by this court in *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1952), 39 Cal.2d 83, 89-90 [244 P.2d 889], in which

---

[2]The view of the commission as to the method followed is indicated by a statement in its Report, Exhibit F, "Upon the record of this case and in accordance with the opinion of the District Court of Appeal, 4th District, rendered November 26, 1952, the Commission must determine the percentage of permanent partial disability which pre-existed the industrial injury and deduct from the rating for the present condition such rating as is attributable to the pre-existing condition."

the employe had a prior disability consisting of loss of vision of his left eye (25 per cent disability), and a later industrial injury to his right eye (rated 24 per cent) and there was a finding of 73¾ per cent combined disability. An award in accord with the rating of 24 per cent was made against the employer's insurer, and after a further hearing at which the Subsequent Injuries Fund was represented the commission made an award against the latter for 49¾ per cent, the remainder of the 73¾ per cent rating for the combined disability.

The award is annulled and the matter is remanded for further proceedings not inconsistent with this opinion.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

It is my opinion that this case was incorrectly decided when on a prior occasion it was before the District Court of Appeal (*Goodwill Industries* v. *Industrial Acc. Com.*, 114 Cal.App.2d 452 [250 P.2d 627]). I voted for a hearing when a petition for hearing was presented to this court after that decision. There the award of the commission of permanent total disability against the employer alone was annulled on the ground there was not sufficient evidence to show that the total disability was caused by the industrial injury; that on the contrary it was caused in part by a prior tubercular condition suffered by Mrs. Harris, the employee. Contrary to that holding the evidence supported the award because it showed the disease had become quiescent—was no longer disabling. The subsequent industrial injury caused it to become active again and it was that activity and its treatment which caused the total permanent disability. There is therefore no occasion for apportioning the payable compensation between the employer and the Fund. (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79 [172 P.2d 884].)

I would therefore affirm the award.