[Civ. No. 21331. First Dist., Div. One. Sept. 10, 1964.]

THE COUNTY OF CONTRA COSTA, Plaintiff and Respondent, v. EAST BAY MUNICIPAL UTILITY DISTRICT et al., Defendants and Appellants.

Harold Raines, John B. Reilley, Frank E. Howard and Robert E. Nisbet for Defendants and Appellants.

John A. Nejedly, District Attorney, Charles L. Hemmings and Stanley K. Dodson, Deputy District Attorneys, for Plaintiff and Respondent.

MOLINARI, J.—Defendants, East Bay Municipal Utility District and Alameda-Contra Costa Transit District, bodies corporate and politic of the State of California, hereinafter referred to as "Utility District" and "Transit District,"[1] respectively, appeal from a judgment in favor of plaintiff, The County of Contra Costa, hereinafter referred to as "the County," for a share of election expenses charged to such districts as a result of the consolidation of certain elections called by them.

## Questions Presented

1. Is Utility District legally obligated to pay the County a share of the costs of the June 3, 1958 special bond election?

2. Is Utility District legally obligated to pay to the County a share of the costs of the November 4, 1958 and November 8, 1960 district directors' election?

3. Is Transit District legally obligated to pay to the County a share of the costs of the November 8, 1960 district directors' election?

## The Record

The case comes to us upon the following agreed statement of facts:

Utility District and Transit District called and ordered, as required by law, the following specified district elections which were, as required by law, consolidated by the County with the following designated statewide general and primary elections:

| Type of Election | Called by | Election With Which Consolidated | Date of Election |
|---|---|---|---|
| Bond | Utility | Statewide Primary | June 3, 1958 |
| Directors | Utility | Statewide General | Nov. 4, 1958 |
| Directors | Utility | Statewide General | Nov. 8, 1960 |
| Directors | Transit | Statewide General | Nov. 8, 1960 |

The respective statewide elections were held and conducted by the County, and it billed each District for the purported consolidation expenses as follows: Utility District, $16,060; Transit District, $4,212. These expenses were not paid and the instant action ensued. The trial court adjudged that each of the Districts should pay their share of the expenses of the consolidated elections in the amount billed, pursuant to the provisions of section 23311, subdivision (c), of the Elections

---

[1] When referred to jointly the defendants will sometimes be referred to herein as "the Districts."

Code,[2] and that the County, having paid the entire cost of these elections ''should in all equity be reimbursed. . . .''

## Contentions on Appeal

The Districts argue that there is no express legislative mandate directing them to share in the expense of consolidated elections. They also argue that the provisions of the general election laws concerning consolidation do not apply to district elections consolidated by operation of law, that under Elections Code section 23311, subdivision (c), the expense of a consolidated election is a county expenditure, and that this statute creates no obligation for reimbursement. The County's answer to these contentions is that since there is no specific statutory provision for cost imposition with respect to the type of elections involved in the instant case, it follows that Elections Code section 23311, subdivision (c), provides a method of sharing the expenses of a consolidated election in the territory affected thereby.

## The 1958 Special Bond Election

In 1958 Utility District called a special bond election pursuant to Public Utilities Code sections 13201 et seq.[3] Pursuant to section 13209[4] the Board of Directors of Utility District determined that this election be consolidated with the statewide primary election to be held on June 3, 1958. The County thereupon ordered the bond election consolidated with the primary election. The consolidated elections were thereafter held on June 3, 1958.

## District Directors' Elections[5]

The election of utility district directors is governed by sections 11821 to 11832, inclusive; that of transit district

[2] § 23311 of the Elec. Code provides: ''Except as otherwise provided in this chapter, when elections are consolidated, the governing body ordering consolidation may, in the territory affected thereby, provide for: (a) The appointment of precinct boards. (b) The formation of precincts for such elections. (c) The expenses of the election.''

[3] All statutory references hereinafter are to the Public Utilities Code unless otherwise indicated.

[4] § 13209 provides in pertinent part as follows: ''Any special bond election may be held separately, or *may* be consolidated with any other election authorized by law at which the voters of the district may vote.'' (Italics added.)

[5] Because the statutory provisions for the election of directors in the respective districts are similar, the three directors' elections set forth in the agreed statement will be considered together.

directors by sections 24821 to 24832, inclusive. Section 11829, providing for the consolidation of elections for directors of municipal utility districts with general elections, reads as follows: ''The board *shall* in the notice, ordinance, or resolution calling an election *consolidate it with the general election* to be held at the same time in the respective counties in which the district is located and authorize the respective boards of supervisors to canvass the returns and certify the result of the canvass to the board. *It shall be the duty of the board or boards of supervisors to so consolidate the election,* canvass the returns, and cause the result thereof to be properly certified to the board of directors of the district. The election shall be held in all respects as if there were only one election, and only one ticket or ballot shall be used. When the county precinct boundaries do not coincide with the boundaries of the wards in the district, the board or boards of supervisors shall, for the purpose of the election only, reprecinct the territory in which the boundaries do not coincide, at least 30 days before the election.'' (Italics added.) Excepting for the omission of the last sentence in section 11829, section 24829, providing for the consolidation of elections for directors of transit districts with general elections, is identical in language to section 11829.

### Consolidation of Elections

It is apparent from a reading of the foregoing statutes that special bond elections of municipal utility districts *may* be consolidated with *any other election*. (§ 13209.)

It is also clear that directors' elections in both municipal utility districts and transit districts *must* be consolidated ''with the *general election* to be held at the same time in the respective counties in which the district is located. . . .'' (§§ 11829 and 24829; italics added.) The Public Utilities Code does not define ''general election.'' However, section 11533, applicable to municipal utility districts, provides that ''Except as otherwise provided in this division elections shall be held and conducted and the result ascertained, determined, and declared in all respects as nearly as practicable in conformity with the general election laws of the State.'' Identical language relating to transit districts is found in section 24532. In view of these provisions, and in conformity with the well-established rule that statutes dealing with the same matter must be read and construed together in the light of each other so as to harmonize them if possible (*Hough*

v. *McCarthy*, 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276]; *County of Placer* v. *Aetna Cas. etc. Co.*, 50 Cal.2d 182, 188-189 [323 P.2d 753]; *People* v. *Derby*, 177 Cal.App.2d 626, 629-630 [2 Cal.Rptr. 401]), the provisions of the Public Utilities Code relating to elections must be read in connection with the general election laws provided for in the Elections Code.

Section 23 of the Elections Code defines "general election" as "the election held throughout the State on the first Tuesday after the first Monday of November in each even-numbered year." This section, when read in conjunction with sections 11829 and 24829, requires the construction that elections for directors of transit and utility districts can only be consolidated with the statewide election held on the first Tuesday after the first Monday of November in each even-numbered year.[6] Insofar as a special bond election of a utility district is concerned, it may be consolidated with any election, and this includes a primary election.[7] (See Elec. Code, § 22.)

The basic statutory provision for consolidation of elections is section 23300 of the Elections Code.[8] This section, in pertinent part, provides as follows: "Whenever two or more elections, including bond elections, of any district, city, county or other political subdivision are called to be held on the same day, in the same territory, or in territory that is in part the same, they may be consolidated pursuant to this chapter upon the order of the governing body or bodies calling the elections." Two other sections of the Elections Code are also pertinent to our inquiry. Section 23301 of said code provides: "Where one of the elections to be consolidated is a statewide election, the board of supervisors of the county in which the consolidation is to be effected may order the consolidation."[9] And in section 23302 of said code it is provided, in pertinent part, as follows: "Whenever an election called by a district, city or other political subdivision for the submission of any

---

[6]The elections for directors in the instant case were consolidated with such general elections, i.e., on November 4, 1958 and November 8, 1960.

[7]The special bond election in the instant case was consolidated with the statewide primary election held on June 3, 1958.

[8]The general provisions pertaining to the consolidation of elections are found in §§ 23300 to 23312, inclusive, of the Elec. Code.

[9]§ 27 of the Elec. Code defines a "statewide election" as "an election held throughout the State."

question, proposition, or office to be filled is to be consolidated with a statewide election, and such question, proposition, or office to be filled is to appear upon the same ballot as that provided for such statewide election, the district, city or other political subdivision shall, at least sixty (60) days prior to the date of the election, file with the board of supervisors, and a copy with the county clerk, a resolution of its governing board *requesting such consolidation* and setting forth the exact form of any question, proposition, or office to be voted upon at such election, as the same is to appear on the ballot.'' (Italics added.) ██ It is apparent, therefore, that where an election called for by a district, city or other political subdivision is to be consolidated with a statewide election the order of consolidation *must* be made by the county board of supervisors. Where, however, such an election is not to be consolidated with a statewide election the order for consolidation is not made by the board of supervisors (unless such board is one of the governing bodies calling the election), but by the body or bodies calling the elections. Thus, under section 23300 of the Elections Code, where none of the elections to be consolidated is a statewide election, the governing body respectively calling for a consolidation of elections is the body which orders the consolidation. ██ Accordingly, as we interpret section 23300, in order for a consolidation to be effected where none of the elections to be consolidated is statewide, *each* of the governing bodies calling the election to be held on the same day in the same or part of the same territory *must* concur in and order the consolidation. Thus, by way of example, the two Districts involved in the instant case could join in calling special bond elections in their territory on the same day, and order consolidation of such elections without the order or authorization of the board of supervisors of the County. (See §§ 13209, 26209; Elec. Code, § 23300.) ██ They cannot, however, join in calling an election for directors without an order of consolidation by the board of supervisors because, under the provisions of section 11829 and 24829, elections for directors can be held only when consolidated with a general election. ██ It should be here noted that section 23301 of the Elections Code, providing for consolidation where one of the elections to be consolidated is a statewide election, is permissive only, and, pursuant to its provisions, the board of supervisors is not required to order a consolidation. However, with respect to the election of directors in transit and utility districts,

it is provided in sections 11829 and 24829 that ''It shall be the duty of the board or boards of supervisors to so consolidate the election. . . .'' Accordingly, under the rule of statutory construction that, as between a special and general statute dealing with a particular subject, the former controls (*Simpson* v. *Cranston*, 56 Cal.2d 63, 69 [13 Cal.Rptr. 668, 362 P.2d 492] ; *Signal Oil & Gas Co.* v. *Bradbury,* 183 Cal.App.2d 40, 52 [6 Cal.Rptr. 736] ), it is mandatory upon a board of supervisors to consolidate such an election for directors with a general election. Thus, in the instant case, the board of supervisors was not required to consolidate the Utility District's special bond election with the statewide primary election, but it had no alternative but to order consolidation of the elections for directors with the statewide general elections.

### The Expenses of Consolidated Elections

Although the Public Utilities Code contains provisions for the calling of elections by utility and transit districts and the consolidation of such elections with other elections, it makes no provision for the costs of elections, except with reference to the formation of districts (§§ 11655, 11656, 24655, 24656), and the submission to the voters of a proposition as to whether a public agency included, or partly included, within a special transit service district will be included within the boundaries of such district (§ 27429).[10] These specific provisions for election costs in the Public Utilities Code are a clear indication that when the Legislature has intended to specifically provide for such costs, other than in the Elections Code, it has done so by specific enactment. In the absence, therefore, of any specific provisions for election costs in the Public Utilities Code with respect to special bond elections

---

[10]§§ 11655 and 11656, pertaining to the formation of a municipal utility district, provide: "The board of supervisors calling the election shall make all provision for the holding thereof throughout the entire district as proposed, and shall pay the cost thereof.'' (§ 11655.) "If a special election is held exclusively on the proposition of organizing a district, the expenditure therefor shall be reimbursed to the county which called the election by means of a tax on all the taxable property within the public agencies and unincorporated territory which was proposed to be included in the district, and this tax shall be added to the next county tax bills. . . .'' (§ 11656.) Sections 24655 and 24656, pertaining to the formation of transit districts contain language identical to that of sections 11655 and 11656.

§ 27429 provides: ''The cost of the election required by this article shall be borne equally by the public agency and the district.''

and the election of directors in transit and utility districts, we must, under the principles hereinbefore discussed, look to the provisions of the Elections Code.

The pertinent statute providing for the expenses of a consolidated election is section 23311 of the Elections Code which provides that "when elections are consolidated, the *governing body ordering consolidation may*, in the territory affected thereby, *provide for:* . . . (c) [T]he expenses of the election." (Italics added.) As we have hereinbefore pointed out, the governing body ordering the elections in the present case was the board of supervisors of the County. As we have already indicated, in the instances where the Transit and Utility Districts may join in consolidating nonstatewide elections, as provided for in section 23300, they are the governing bodies ordering consolidation. Hence, in such cases it would devolve upon them, under Elections Code section 23311, to "provide for" the expenses of the consolidated election. Of particular significance with respect to section 23311 are the words "provide for." ▮ It is the established rule that words in a statute should be given their ordinary meaning and receive a sensible construction in accordance with the commonly understood meaning thereof, except when clearly otherwise intended or indicated. (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526]; *Benson* v. *Superior Court,* 214 Cal.App.2d 551, 558 [29 Cal.Rptr. 760].) ▮ It is also the rule that where a word of common usage has more than one meaning, the meaning which will best attain the purpose of the statute should be adopted, even though the ordinary meaning of the word is thereby enlarged or restricted. (*City & County of San Francisco* v. *County of San Mateo,* 36 Cal. 2d 196 [222 P.2d 860]; *People* v. *Asamoto,* 131 Cal.App.2d 22, 29 [279 P.2d 1010].) ▮ In accordance with these rules of construction, we hold that the words "provide for," as used in the statute, mean "to make provision for"; "to make a proviso or stipulation" (see Webster's Third New Internat. Dict.); and that, therefore, the county board of supervisors is empowered to require, in its order of consolidation, that the body or bodies calling the consolidated election pay a proportionate share of the reasonable expenses of such election. Section 23311, subdivision (c), of the Elections Code does not make it mandatory upon the board of supervisors to compel the district to pay any part of such expenses. The statute uses the word "may," and is therefore permissive.

(See Elec. Code, § 15.) If the board of supervisors elects, in its discretion, not to require such proportionate payment in its order of consolidation, or if it fails or omits to provide for such payment in its said order, then the county is obliged to bear the proportionate cost it might have allocated against the body calling the election, unless such body is the governing body of a city. Section 10000 of the Elections Code, applying generally to all elections and not specifically to consolidated elections as does section 23311, subdivision (c), of said code, provides as follows: "All expenses, authorized and necessarily incurred in the preparation for and conduct of elections as provided in this code, shall be paid from the several county treasuries, except that when an election is called by the governing body of a city, the expenses shall be paid from the treasury of the city. All payments shall be made in the same manner as other county or city expenditures are made."

It should be here noted that the County's brief relies heavily upon 36 Opinions California Attorney General 224. In that opinion, the Attorney General concluded that a utility district is required to pay its proportionate share of the expenses of any district election consolidated with a statewide election conducted within the county. This conclusion coincides with our own, but rests upon different reasoning. The Attorney General observes that Elections Code section 10057, subdivision (c) (now § 23311, subd. (c)), does not provide how the costs of a consolidated election are to be borne as between the consolidating bodies.[11] Therefore, he concludes that the election cost should be borne by the governmental entity receiving the benefit of the election, because equity dictates that the costs should be shared in some manner. In support of this conclusion the Attorney General relies upon the policy expressed in section 3700 of the Elections Code (now § 10000), and states that "By inserting 'district' for

---

[11]The Attorney General's interpretation of the law in this area rests on the belief that where a statewide election is consolidated with a municipal utility district election there are normally two bodies ordering the consolidation, and, where the elections *must be* consolidated, there is no true order of consolidation. (36 Ops. Cal. Atty. Gen. 224, 226-227.) Our opinion, as we have hereinbefore indicated, is that where an election is consolidated with a statewide election there is only *one* order of consolidation, and this order is made by the board of supervisors in the area in which the consolidation is to be effected. (See Elec. Code, §§ 23301 and 23302.)

'city' in section 3700 of the Elections Code the governing body of a district is charged with the costs of elections called by it, whether consolidated or not." (P. 227.) Under his interpretation, therefore, section 10000 of the Elections Code is "as applicable to district elections which must be consolidated with county elections as it would be to those which are consolidated on a purely permissive basis." (Pp. 227-228.) This convenient interchange of words in the subject statute appears to us not to be in conformity with the basic principles applicable to judicial interpretation of statutes. Had the Legislature intended to include districts in section 10000 of the Elections Code it would have said so. A perusal of the Elections Code discloses instances wherein the Legislature has specifically referred to a district and a city in the same statute. (See particularly Elec. Code, §§ 23300, 23302, applicable to consolidated elections.) The Attorney General relies upon 31 Opinions California Attorney General 207, as authority for the substitution of one entity for another in the Elections Code. That opinion was concerned with the Public Utility District Act (div. 7 of Pub. Util. Code), and its essence is that the conduct of a recall proceeding for directors of a public utilities district lies exclusively within the province of the district itself. The Attorney General was there construing section 16004 which provides that such a recall is to be "pursuant to general law with reference to recall of county officers." In concluding that whenever the Elections Code reads " 'board of supervisors' " it be deemed to read " 'board of directors,' " and wherever it reads " 'county clerk' " it is to be deemed to read " 'clerk and ex-officio secretary,' " (p. 209) where a recall election is to be held in a public utilities district, the Attorney General states that he believes the Legislature, by incorporating the general law of the Elections Code by reference in section 16004, merely intended to incorporate the *mechanics* of the recall procedure. In the case at bench we have no explicit directive that Elections Code section 10000 is incorporated by reference in any particular statute having to do with the Transit or Utility Districts so as to make the mechanics of assessing costs of elections provided for in section 10000 of the Elections Code applicable to bond and directors' elections of such Districts which have been consolidated with statewide elections. Our conclusion is that by virtue of section 11533, unless otherwise provided in the Public Utilities Code, the general election law is applicable to elections called by municipal utility and transit districts,

and that when such elections are consolidated with statewide elections the county must bear the entire cost of such consolidated election under Elections Code section 10000, unless, in its order of consolidation, it provides, pursuant to Elections Code section 23311, that the transit or utility district pay its reasonable share of the costs of the election.

We are not persuaded that any different result should obtain merely because the district directors and the county board of supervisors were compelled by statute to consolidate the three directors' elections with the general election. No statute or case authority has created an exception in the situation where the governing body ordering consolidation must do so by virtue of statutory mandate. Hence, Elections Code section 23311 is applicable to district elections which *must be* consolidated with county elections and to those which are consolidated on a purely permissive basis.

The Districts have advanced the proposition that the entire cost of a district election consolidated with an election conducted by a county is properly a county expense by virtue of Elections Code section 23311. They assert that this result follows because of the statutory language, to wit, that the governing body ordering consolidation may "provide for" certain enumerated duties. This argument assumes that section 23311 is mandatory, when in reality the language of the statute is permissive. If the Legislature had wanted to place the responsibility of paying for a district directors' election solely upon the county, it would not have employed the term "provide for," which has a wider connotation than that which the Districts would ascribe to the term. The appropriate language would be that the governing body ordering consolidation "shall pay" for the expenses of the election. The omission of such mandatory language and the use, instead, of permissive language reasonably permits the interpretation that the method and manner of assessing the share of election costs to be borne by the body calling the consolidated election, and the amount thereof, is left to the discretion of the governing body ordering consolidation.

The Districts have also argued that since there was no expressed legislative directive that districts pay the costs of consolidated elections, they are not bound to pay their proportionate share of the costs. While it may be technically correct to say that there is no express legislative direction for the sharing of consolidated election expenses, nevertheless,

the consolidation provisions of the Elections Code, when harmonized with the provisions of the Public Utilities Code, indicate that the Legislature intended that there be a sharing of such expenses. The Districts rely on *City of Oakland* v. *Oakland etc. School Dist.,* 138 Cal.App.2d 406 [291 P.2d 1001], which involved an interpretation of Education Code section 2105 (now § 1227).[12] This case does not involve the consolidation of a district election with a statewide election conducted by a county, but a controversy between the City of Oakland and the Oakland Unified School District concerning the payment of pro rata costs of a municipal election held in the City of Oakland. *Muir* v. *Steinberg,* 197 Cal.App.2d 264 [17 Cal.Rptr. 431], cited by the Districts, is likewise not in point. The controversy there was not concerned with a consolidated election, but with the applicability of certain sections of the Water Code with respect to election contests. The reviewing court held that a provision of the Water Code (§ 21706), authorizing a voter to file an affidavit, appear on the day for canvassing returns and demand a recount of the precinct vote, is not an exclusive remedy, nor is resort to it mandatory before proceeding under section 21735 of the Water Code authorizing an election contest " 'as nearly as practicable' " (p. 269) in the manner provided by a specified chapter of the Elections Code.

There is extended discussion in the respective briefs concerning the issue of fairness and equity. In the case at bench the court below found that the Districts should pay their proportionate share of the election costs because it was fair and equitable to do so, relying on *Cupertino Sanitary Dist.* v. *Board of Supervisors,* 208 Cal.App.2d 52 [25 Cal.Rptr. 8]. The argument on fairness and equity advanced by the County is based upon the premise that a district which only performs its public functions within a portion of a particular county should not burden taxpayers of the county with election costs when they receive no benefit from such election. *Cupertino* involved a dispute as to whether a sanitary district or the county had the obligation to conduct and finance the recall election of the directors of the district. The appellate court held that the district and not the county was to bear the cost of conducting the recall election. The basis of the decision

---

[12] § 2105 of the Education Code then provided for the apportionment of the expenses and costs of municipal elections between a city and a school district whose boundaries were not coterminous with those of the city.

was that section 6489.5 of the Health and Safety Code, providing that the directors of a sanitary district may be recalled " 'in accordance with' " (p. 58), the recall provisions of the Elections Code applicable to county officers, merely has reference to the mechanics of the recall procedure applicable to such officers and not to the payment by the county of the costs of such an election. The *Cupertino* decision is not based upon the "equities" of the situation. Such intimation, if any may be drawn, is a reference to the reasoning of the trial court in its memorandum decision that "To require the county to pay for the cost of conducting the proposed recall election would be to impose upon county taxpayers an item of expense arising from the administration of a district over which the vast majority of county taxpayers have no control and from which they receive no benefit." (P. 58.) We are of the view, therefore, in the case at bench, that the court below was not governed by principles of fairness and equity in reaching its decision, but by the applicability of Elections Code section 23311, subdivision (c) to the facts of the case. In this respect, the trial court correctly determined that this statute was dispositive of the present case. The difficulty presented in the instant case, however, lies in the failure of the record to disclose whether any provision for the payment of the costs of the respective elections by the Districts was made in the consolidation orders as required by Elections Code section 23311, subdivision (c). The record is restricted by the agreed statement of facts which does not contain the subject orders of consolidation nor any statement of the provisions thereof. Although we deem ourselves limited to the agreed statement of facts, as was the trial court, we judicially notice that the complaint in this case has attached to it, as exhibits, what purport to be copies of the orders of consolidation. We also note that in three of the four purported orders of consolidation there is provision for payment on the part of the Districts of certain specified costs of the election. Confined, as we are, by the limited record, we have no way of ascertaining the authenticity, validity or effect of the alleged orders. A proper disposition of the instant case, therefore, in view of the posture of the record, requires that we reverse the judgment with directions to the trial court to reopen the cause for the purpose of determining, in the light of the conclusions herein reached, whether, and to what extent, the orders of consolidation make provision for payment on

the part of the Districts of the expenses of the consolidated elections. Such a determination, of necessity, requires that the Districts be afforded the opportunity of litigating whether the apportionment of the costs of the respective elections, as represented by the billings in the present case, are fair and equitable.

The judgment is reversed, with the directions hereinabove set out. Each of the parties to this appeal shall bear its own costs.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied October 5, 1964, and appellants' petition for a hearing by the Supreme Court was denied November 4, 1964.