TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-906 |
| of | : | MARCH 14, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| CLAYTON P. ROCHE<br>Deputy Attorney General | : | |

_____

THE HONORABLE FLOYD R. B. VIAU, COUNTY COUNSEL, FRESNO COUNTY, has requested an opinion on the following question:

In an unsuccessful recall effort to recall school trustees, where a county clerk performs services including checking signatures on the recall petition and certifying the petition as insufficient, are the costs incurred by the county clerk a county charge or a school district charge?

CONCLUSION

In an unsuccessful recall effort to recall school trustees, where a county clerk performs services including checking signatures on the recall petition and certifying the petition as insufficient, the costs incurred by the county clerk are a school district charge.

1

ANALYSIS

This opinion request posits the issue as to which entity is to bear the costs incurred by the county clerk in an unsuccessful recall effort in a school district, the county or the school district.

The Education Code presently provides that "[s]chool district elections . . . shall be governed by the Elections Code, except as otherwise provided in [the Education Code]. (Ed. Code, § 5300.) The Education Code additionally provides in the same vein that "[t]he provisions of this chapter [relating to the "Conduct of Elections"] shall apply to all district elections, except as otherwise provided by law. . . ." (Ed. Code, § 5301.) It also provides that "the county clerk or the registrar of voters . . . shall perform the duties incident to the preparation for, and holding of, all district elections." (Ed. Code, § 5303.)

Prior to 1977, recall elections in school districts were governed by sections 5050 through 5076 of the Education Code. These provisions were repealed, effective April 30, 1977. (Stats. 1977, ch. 36, § 548.) Now, recall elections in school districts are conducted under general procedures and provisions in the Elections Code applicable to "the recall of elective officers of the State of California and of all counties, cities, school districts, county boards of education, community college districts, special districts, and judges of courts of appeal and trial courts [other than where city charters contain their own recall provisions.] . . . ." (Elec. Code, § 27000.) In short, the Election Code now generally governs all recall proceedings.

Despite the removal of the recall provisions from the Education Code, that code still contains provisions relating to the payment of school district elections generally, and recall elections specifically. Thus, section 5420 of the Education Code provides as to costs generally:

"The cost of any school district or community college district election may include, *but need not be limited to*:

(a) Compensation of precinct election officers.

(b) Publication of notices.

(c) The cost of printing official ballots, sample ballots, indexes, arguments, statements, official notices, and card notices.

(d) Mailing charges for card notices, arguments, recommendations, statements, and sample ballots.

2

(e) Forms for rosters, tally sheets, certificates, envelopes, declaration of results forms, and legal forms required for bond elections.

(f) Precinct maps.

(g) The actual cost of supplies such as flags, ballot boxes, chairs and tables, booths, ink pads and stamps, and pencils; provided, that if any such can be borrowed from any state or county office, no charge for rental shall be included in the cost of elections." (Emphasis added.)

Section 5421 of the Education Code provides:

"The cost of any election held within a single district shall be borne by the entire district, and shall be paid out of its funds.  Election costs shall be determined by the county clerk or registrar of voters and approved by the county board of supervisors"

Section 5424 of the Education Code provides:

"The cost of any recall elcection shall be borne by the district in which the recall election is held and paid from district funds."

(See also similar provision in Ed. Code, §§ 5422, 5423, 5425 and 5426 regarding costs of other specific elections held in school districts.)

Despite the provisions of sections 5420, 5421 and 5424 of the Education Code, it has been urged that the county, not a school district, is to be charged with the costs of an *unsuccessful* recall effort where the proponents of the recall do not gather sufficient signatures on the petition to have the recall go forward.  (See generally, Elec. Code, §§ 27210-27217.)  As stated in section 27216 of the Elections Code:  "If the certificate [of the county clerk or registrar of voters] shows that the petition is insufficient, no action shall be taken on it; but the petition shall remain on file."

In support of this position it is urged that under sections 5421 and 5424 of the Education Code recall election costs are a school district charge only if an election is actually held.  In further support of this position it is urged that this is confirmed by the fact that section 5420 of the Education Code, *supra*, which enumerates specific costs to be paid by a school district, does *not* specify costs incurred in checking signatures or other preliminary matters; that had the Legislature contemplated that such preparatory costs be included, it would have so specified.

3

From these arguments, it is finally urged that the costs of an unsuccessful recall effort are to be borne by the county under the general provisions of the Elections Code as costs attributable to the performance of the statutory duties of the county clerk or registrar under *that* code. Section 10000 of the Elections Code is then cited in support of this conclusion. It provides:

"All expenses, authorized and necessarily incurred in the preparation for and conduct of elections as provided in this code, shall be paid from the several county treasuries, except that when an election is called by the governing body of a city, the expenses shall be paid from the treasury of the city. All payments shall be made in the same manner as other county or city expenditures are made. The clerk, in providing the materials required by this division, need not utilize the services of the county or city purchasing agent."

However, we conclude otherwise. Initially we note that the enumeration of specific costs in section 5420 of the Education Code, *supra,* is not exclusive. The section states that "[t]he cost of any school district . . . election may include, but need not be limited to" the enumerated costs. Accordingly, the section is broad enough to include preliminary costs such as checking signatures on a recall position if such are "costs of any school district election" or "election costs" within the meaning of sections 5420, 5421 and 5424, of the Education Code, *supra.* In short, the issue presented is what does the word "election" mean in those sections in the context of a recall proceeding.

Recall proceedings are commenced "by the service, filing, and publication or posting of a notice of intention to circulate a recall petition." (Elec. Code, § 27007.) The recall petition is then circulated and filed and the signatures checked for sufficiency in number. (See Elec. Code, §§ 27030-27217.) If the recall petition is found to be sufficient, the governing body (in our case, the school board) must call the election. (Elec. Code, § 27230.) Thereafter, the final steps in the election process are taken (ballot preparation, etc.) to the end that the recall election is held on the date specified or required by law. (Elec. Code, § 27310 et seq.)

In the context of recall proceedings, two plausible meanings of the word "election" as used in sections 5420, 5421 and 5424 of the Education Code appear to emerge. The first is that the word "election" refers only to that part of the recall process which deals with the actual election commencing in point of time with the certification of the sufficiency of the recall petition. Such a certification is the statutory condition precedent to calling a recall election. The second is that the word "election" is meant to encompass the entire recall proceedings. It would therefore include preliminary matters

4

attributable to the proceedings such as the checking of signatures on the recall petition by the county clerk.

Our task is to "ascertain the legislative intent so as to effectuate the purpose of the law." (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541.)  The basic purpose of sections 5420, 5421 and 5424 of the Education Code is to charge school districts with costs *they* generate because of elections.  Given the two choices expressed above, we believe the second construction best advances that purpose. We can discern no reason why the Legislature would have distinguished between costs incurred by the county *for the benefit of a school district* after the certification of a recall petition and those incurred by the county *for the benefit of a school district* before certification of a recall petition.  But for the recall proceedings, neither category of costs would have been incurred.  Clearly  the Legislature did not make reimbursement for costs contingent upon a successful recall election.  Why then would the Legislature have intended to require the county, as opposed to the school district, to pay preliminary costs of a recall proceeding merely because the recall effort failed at the petition stage instead of the election stage?

We would also note that section 10000 of the Elections Code, set out at the outset herein, and relied upon as authority for the *county* being charged with such preliminary costs, does not make such a distinction.  In cases where it is applicable, the county or the city is charged with "[*a*]*ll* expenses authorized and necessarily incurred in the *preparation for and conduct of elections*." We believe that costs such as checking signatures on a recall petition are "incurred in the preparation for" an election. (Emphasis added.)  Accordingly, this section as written additionally supports the concept that the Legislature intends that the entity to be charged with election costs is to pay for *all* costs whether the entity is the county, a city or a school district.

Support for this conclusion may also be found in *Cupertino Sanitary Dist. v. Board of Supervisors* (1962) 208 Cal.App.2d 52.  That case arose after the completion of an unsuccessful recall election directed at the district board members.  The question presented on appeal was "whether the district or the county should bear the costs of the election." (*Id.*, at p. 52.)  The district's organic act provided that "the directors of a sanitary district may be recalled 'in accordance with the recall provisions applicable to county officers.'" (*Id.*, at p. 56.)

Relying heavily upon an opinion of this office which presented a similar question as to a recall election in a public utility district (31 Ops.Cal.Atty.Gen.307 (1958)), both the trial court and the District Court of Appeal concluded that the law imposed upon the sanitary district both the duty to conduct and to pay for recall elections, including the checking of signatures and the certification of the recall petition.  The District Court of Appeal noted, inter alia:

5

". . . The [trial] court also pointed out that a sanitary district, as a political entity entirely separate and apart from the county, has its own funds and its own means of financing its activities through taxes and bonds. To require the county to pay for the cost of conducting the proposed recall election would be to impose upon county taxpayers an item of expense arising from the administration of a district over which the vast majority of county taxpayers have no control and from which they receive no benefits . . . ." (208 Cal.App.2d at p. 58.)

This conclusion also comports with the following observation of the court in *County of San Mateo* v. *Belmont County Water District* (1978) 83 Cal.App.3d 485. There the question was presented whether the costs of an election to determine whether the water district should become a subsidiary district to the city, should be a district charge under general provisions of the district law and other laws, or should be a county charge under section 10000 of the Elections Code, *supra*. The court observed:

"We also note that the costs of such an election by, or concerning, a lesser public entity such a water district or a city appear traditionally to have been a charge against the local entity, and not the county. An earlier County water district law provided that the costs of a water district's elections 'shall be borne by the district.' (Stats. 1949, ch. 274, [Elec. Code] section 30704, p. 503.) The same policy that a local entity's election shall be at its own expense is exemplified by Elections Code section 10000 here relied upon by the District; as to elections called by the governing body of a city, 'the expenses shall be paid from the treasury of the city.' And even where a single election concerns the affairs of both a county and a local district it is held by executive authority of 'great weight' (See *Edgar* v. *Oakland Museum Advisory Com.*, 36 Cal.App.3d 73, 77 [111 Cal.Rptr. 364]) that the costs shall be shared between the two in some equitable manner (see 36 Ops.Cal.Atty.Gen. 224). And in such a situation, we held in *County of Contra Costa* v. *East Bay Municipal Util. Dist.*, 229 Cal.App.2d 556, 570 [40 Cal.Rptr. 495], that 'the apportionment of the costs of the respective elections [should be] fair and equitable.'"

Accordingly, we conclude that in an unsuccessful recall effort, where a county clerk performs services including checking signatures on the recall petition and certifying the petition as insufficient, the costs incurred by the county clerk are a school district charge.

\*\*\*\*\*

6