[S. F. No. 20624. In Bank. June 1, 1961.]

DORIS M. SIMPSON, as Executrix, etc., Respondent, v. ALAN CRANSTON, as Controller of the State of California, et al., Appellants.

64

Stanley Mosk, Attorney General, Marcus Vanderlaan, Robert L. Bergman and Willard A. Shank, Deputy Attorneys General, for Appellants.

A. Brooks Berlin and Alvin A. Lobree for Respondent.

SCHAUER, J.—This mandamus proceeding was instituted by one Robert T. Simpson,[1] an inspector of the Division of Narcotic Enforcement, Department of Justice, of the State of California, against certain state officials as defendants to compel the approval of Simpson's claim seeking payment for uncompensated overtime hours allegedly worked by him prior to and during the year 1948. Simpson was a civil service employe. The trial court ordered issuance of the peremptory writ directing defendants to approve the claim in the sum of $9,715.50 for overtime worked during the period from February 6, 1943, to and including June 9, 1948, and this appeal followed. We have concluded that applicable statutes, as well as previous decisions of this court, are clear that employes in positions allocated to the classification of that held by Simpson may not recover pay for overtime worked

---

[1] Simpson has since died, and his executrix has been substituted as petitioner.

during the subject period of time, and that the judgment should therefore be reversed.

 It is established law in this state that in the absence of statutory provisions a public employe is not entitled to compensation for overtime worked. (*Adams* v. *City of Modesto* (1960), 53 Cal.2d 833, 835 [350 P.2d 529]; *Martin* v. *Henderson* (1953), 40 Cal.2d 583, 589-590 [255 P.2d 416].)

 Moreover, "In the absence of a statutory provision therefor, time off granted for work done in excess of . . . [reasonable work] hours is not given as of right, but is allowed in accordance with the necessities of the duties to be performed. [Citations.] The fact that normal hours of work are established and compensating time off is provided for work beyond those hours does not, of itself, give the employee a right to payment for overtime." (*Martin* v. *Henderson* (1953), *supra,* 40 Cal.2d 583, 590 [4].)

As further stated in the Martin case, at page 589, "Prior to February 6, 1943, the effective date of section 150.5 of the State Civil Service Act, *supra,* there was no statutory provision for overtime compensation." The subject section (150.5) was added to the State Civil Service Act in 1943 and, as above mentioned, became effective February 6, 1943. (Stats. 1943, ch. 20, § 2, p. 136; now, with changes immaterial here, found in Gov. Code, § 18005.) Its relevant provisions are: "Upon a separation from service, without fault on his part a person shall be entitled to a lump sum payment as of the time of separation . . . for any time off to which the person is entitled by reason of previous overtime work where compensating time off for overtime work is provided for by the appointing power or by the rules of the [State Personnel] board. Such sums shall be computed by projecting the accumulated time on a calendar basis so that the lump sum will equal the amount to which the employee would have been paid had he taken the time off but not separated from the service. . . ."[2]

---

[2]Prior to February 6, 1943, the effective date of section 150.5, the rules of the State Personnel Board adopted pursuant to its power to "establish and adjust salary ranges" (Stats. 1937, ch. 753, § 70, p. 2094; now Gov. Code, § 18850), provided, in rule 12, section 2: . . .

"(c) The rates of pay set forth in the pay schedules, unless otherwise indicated in such schedules, represent the total compensation in every form. . . .

"(h) When the rate of pay is in terms of dollars a month, no additional payment for overtime shall be made to any employee for services rendered by him in the same classification in the same department."

Thereafter, effective June 7, 1943, sections 73 and 73.5 were added to the State Civil Service Act (Stats. 1943, ch. 1041, §§ 1, 2, pp. 2976, 2977; now Gov. Code, §§ 18020-18024), and, together with section 150.5, provided "a comprehensive system of overtime computation and compensation." (*Martin* v. *Henderson* (1953), *supra,* 40 Cal.2d 583, 591 [7a].) Section 73.5 dealt with noncivil service employes and is not relevant here. Section 73,[3] concerning civil service employes, among other things directed the State Personnel Board, for "purposes of determining eligibility for overtime compensation," to allocate civil service employes employed on a monthly salary basis into four groups or classes according to hours worked per week, including " (4) Classes which *cannot be included in any plan of payment for overtime* because: (a) While requiring at least 40 hours per week, the duties and responsibilities are such that they do not adapt themselves to a maximum number of hours per week." (Italics added.) Pursuant to this directive the personnel board in August 1943, promulgated its rule 27 establishing the work week groups specified by section 73, and providing in paragraph d of section 1 of rule 27, that "d. The provisions of this rule

---

[3]Section 73: "Every State employee compensated on a monthly basis required and ordered to work in excess of a normal work week as established by the State Personnel Board for the class of his position, shall receive overtime compensation based on his regular rate of pay for all such overtime; provided, that no overtime compensation shall be paid on any portion of an employee's regular rate of pay in excess of two hundred fifty dollars ($250) per month.

"*Within 90 days of the effective date of this section, the State Personnel Board shall for each class in the State service for which a monthly salary range is fixed determine and establish the normal work week for the class.* For purposes of determining eligibility for overtime compensation, the *State Personnel Board shall allocate,* and reallocate as the needs of the service require, *each State civil service class* for which a monthly salary range is fixed *into one of the following groups:* . . .

"(1) Classes with a normal work week of 40 hours;

"(2) Classes with a normal work week of 44 hours;

"(3) Classes with a normal work week of 48 hours;

"(4) *Classes which can not be included in any plan of payment for overtime because:*

"(a) *While requiring at least 40 hours per week, the duties and responsibilities are such that they do not adapt themselves to a maximum number of hours per week;* . . .

"(b) The performance of duties is required on a part-time or intermittent basis and does not amount to a maximum of 40 hours per week.

"Nothing in this act shall be construed as prohibiting the granting of compensating time off in lieu of overtime worked where such compensating time off can be granted within 30 days of the date worked and where it can be granted without impairing the services rendered by the agency. The State Personnel Board shall adopt rules and regulations governing overtime compensation as herein provided." (Italics added.)

do not apply to positions allocated to classes in group 4 and nothing in this rule shall be construed to prevent a state agency from allowing compensating time off to employees in such classes when they are required to work in excess of the normal work week established by the employing agency for employees in this group.'' Simpson was at all times here involved allocated by the board to this work week group 4, which by the provisions of section 73 ''cannot be included in any plan of payment for overtime.''[4]

It thus appears that although section 73 specifically declares that group 4 employes (including of course, Simpson) ''can not be included in any plan of payment for overtime,'' nevertheless both the Legislature (in the last paragraph of section 73) and the personnel board (in rule 27, section 1, paragraph d) in the interests of a fair policy and of efficient management and satisfactory employment relations expressly provided that even though group 4 employes could not be paid for overtime work the involved state agencies were still not forbidden to grant (under certain circumstances and within a limited time) compensating time off in lieu of overtime worked. Such a policy appears to logically and reasonably contemplate and provide for the exigencies of employment in a group 4 class, such as that of narcotic inspector.

Thereafter, in 1945, the entire State Civil Service Act was placed in the Government Code, with former section 150.5 becoming section 18005 of the Government Code and former section 73 becoming sections 18020-18024 (i.e., a part of art. 2, ch. 1, pt. 1, div. 5, tit. 2) of that code.[5] No substantive changes were made, however, until the amendment of sections

---

[4]That the position of narcotic inspector held by Simpson was one which ''While requiring at least 40 hours per week, the duties and responsibilities are such that they do not adapt themselves to a maximum number of hours per week,'' as delineated in section 73 for group 4 employes, is shown without contradiction in the evidence in this case.

[5]At the same time section 18025 was added to the Government Code, providing: ''All employees shall be entitled to the following holidays: [Holidays listed] . . . Any employee who may be required to work on any of the holidays herein mentioned, and who does work on any of said holidays, shall be entitled to be paid compensation or given compensating time off for such work within the meaning of Section 73 of this act. . . .'' (This inadvertent reference to former section 73 of the Civil Service Act was corrected in 1947 (Stats. 1947, ch. 1339), when the words ''Section 73 of this act'' were changed to ''this article.'')

Inasmuch as petitioner's counsel has declared that petitioner is claiming only overtime generally, and makes no distinction as to Saturdays, Sundays, or holidays, it appears that section 18025 need be given no separate consideration in this case.

18020-18024 in 1947 (Stats. 1947, ch. 1304), which for the first time permitted the personnel board to provide for overtime compensation for employes in work week group 4. Thus, effective September 19, 1947, the definition of group 4 found in section 18020 was changed to read: "(4) Classes and positions with unusual conditions or hours of work requiring the establishment by the Personnel Board of special provisions governing hours of work or methods of compensation for overtime."[6]

The Personnel Board did not, however, make any provisions for overtime for group 4 employes until June 9, 1948. Instead, on September 19, 1947, the day that the 1947 amendments to sections 18020-18024 became effective, the board adopted a resolution stating that "except as may be provided hereafter, employees . . . allocated to Group 4 shall not receive overtime compensation but may be allowed compensating time off as permitted by the appointing power for work in excess of the work week, if any, established by the appointing power for such classes or positions in his agency." Thereafter, effective June 9, 1948, the board, as part of a general reorganization of the overtime rules, for the first time made extensive provision for employes in group 4. June 9, 1948, is also the cut-off date of Simpson's claim and of the judgment rendered in this case; it is only as to overtime allegedly worked prior to June 9, 1948, that the claim was filed and that the trial court ordered it approved. Presumably Simpson received either compensating time off or cash payment if he worked any overtime subsequent to that date.

It is thus apparent that although section 150.5 of the Civil Service Act provided in general terms for cash payment, upon separation from service, for overtime worked by certain employes after February 6, 1943, section 73 of the act declared in express language that employes in group 4,

---

[6]Also in 1947, as part of a general rearrangement and reorganization of the rules of the personnel board, the original rule 12 on the pay plan (subsequently called article 12) became rule 94 and provided: "94. Entire Compensation. Unless otherwise indicated in the schedule of salary ranges, the rates of pay set forth in the schedule represent the total compensation in every form except for overtime compensation."

At the same time the original rule 27 (subsequently called article 27) became article 6 (rules 131-137). No substantive changes were effected, however, and rule 137 of article 6 still provided, "137. Group 4 Employees. Although this article does not apply to employees whose classes are allocated to Group 4 under Section 18020 of the act, an appointing power may allow compensating time off to such employees when they are required to work in excess of the work week, if any, established by the appointing power for such classes in his agency."

which included Simpson, "can not be included in any plan of payment for overtime." ■ We also believe that the provisions of section 73 indisputably control those of section 150.5, both because section 73 (effective June 7, 1943) was a later enactment (see *Union League Club* v. *Johnson* (1941), 18 Cal.2d 275, 278 [2] [115 P.2d 425]), and because a special statute dealing expressly with a particular subject controls and takes precedence over a general statute covering the same subject. (*In re Williamson* (1954), 43 Cal.2d 651, 654 [1] [276 P.2d 593]; *Burum* v. *State Compensation Ins. Fund* (1947), 30 Cal.2d 575, 586 [4] [184 P.2d 505].) The provisions of the subject special statute continued in effect until June 9, 1948, and thus bar Simpson's claim for overtime worked previous to that date and subsequent to June 7, 1943, the effective date of section 73.

■ Petitioner, however, relies upon section 18005.5 of the Government Code, effective October 1, 1949, which states that "Any time off *to which an employee is entitled* by reason of overtime worked prior to June 9, 1948, may be compensated by a lump sum payment in the manner provided in Section 18005 [formerly section 150.5 of the Civil Service Act] at any time prior to the separation of the employee from service or upon such separation . . ." (Italics added.)

*Martin* v. *Henderson* (1953), *supra,* 40 Cal.2d 583, dealt, as already noted herein, with former section 150.5 of the Civil Service Act, effective February 6, 1943, which provided (in language strikingly similar to that of Government Code, section 18005.5) for monetary payment "for any time off *to which the person is entitled* by reason of previous overtime work . . . ." (Italics added.) It was there held, with respect to overtime plaintiffs claimed to have worked *before* February 6, 1943, that (p. 591), "[7a] The enactment of section 150.5 of the State Civil Service Act and the addition of sections 73 and 73.5 to the act . . . did not create a right to payment for overtime previously worked. The statutes were not, and could not, be, retroactive. 'The Legislature shall have no power to grant, . . . any extra compensation or allowance to any public officer, agent, servant, or contractor, after service has been rendered, . . . in whole or in part, nor to pay, or to authorize the payment of, any claim hereafter created against the State, . . . under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void.' (Const. art. IV, § 32.) [8] The services performed

by Martin and Redwine prior to February 6, 1943, were such as they were bound to render for their fixed monthly salaries. Under the prohibition of the Constitution, they could be granted no extra compensation for such services.'' Likewise, section 18005.5 of the Government Code may not be given retroactive application to permit payment for overtime claimed to have been worked by Simpson in the case at bench.

Moreover, and in any event, although the time within which the Legislature permitted the granting of compensating time off to group 4 employes was in 1947 extended to ''within twelve calendar months following the month in which the overtime was worked'' (Gov. Code, § 18023, one of the successor sections to former section 73 of the Civil Service Act;[7] Stats. 1947, ch. 1304, § 5, p. 2842), such 12-month period had, of course, as to any overtime worked prior to June 9, 1948, expired before the date (October 1, 1949) section 18005.5 became effective, and thus on such effective date Simpson was no longer ''entitled'' to any time off ''by reason of overtime worked prior to June 9, 1948,'' as specified in section 18005.5. For this further reason, therefore, that section provides no support for Simpson's claim.

By reason of the conclusions above stated, no useful purpose would be served by discussion of other contentions of the parties.

The judgment ordering issuance of the peremptory writ of mandamus directing defendants to approve Simpson's claim is reversed, with directions to the trial court to enter judgment for defendants.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

---

[7]See footnote 3, *ante.*