[Civ. No. 22591.   First Dist., Div. Two.   June 22, 1965.]

TRUCK INSURANCE EXCHANGE (FARMERS INSUR-
ANCE GROUP), Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION and ANTHONY TARANTINO,
Respondents.

Mullen & Filippi and John A. Thompson for Petitioner.

Everett A. Corten and Charles W. Decker for Respondents.

SHOEMAKER, P. J.—By this petition Truck Insurance Exchange seeks annulment or modification of a workmen's compensation award made to Anthony Tarantino.

On January 31, 1961, Tarantino was driving a ready-mix cement truck for Consumers Rock and Cement Company. The truck overturned and as a result, Tarantino suffered an injury to his neck, low back, and loss of gripping power in his right hand. He was thereafter awarded a permanent disability rating of 31¾ per cent.

On April 6, 1961, he returned to work with a different employer (Bode), but drove the same type of truck. However, he was now compelled to wear a back support to perform his work, and could not handle the sacks of cement required by the employment without help, as he had prior to his injury.

On October 29, 1963, while engaged in his employment, Tarantino suffered a myocardial infarction, which was precipitated by the effort involved in maneuvering the heavy

cement truck in a constricted area. Applicant was disabled until February 10. 1964, when he returned to work. When the treating physician learned of the type of work involved, climbing, lifting 30 to 38 pound chutes, and 94 pound sacks of cement, he advised Bode that such activity could bring on another heart attack. Upon receipt of this advice, Bode terminated applicant's employment on February 27, 1964, and shortly thereafter applicant filed for workmen's compensation benefits. On November 17, 1964, the Industrial Accident Commission awarded permanent disability at a rate of 49 per cent (heart only).

Petitioner sought but was denied reconsideration on the same ground that it now presents to this court.

The sole contention of petitioner is that the Industrial Accident Commission erred in failing to grant credit by way of apportionment for the preexisting disability which applicant suffered as a result of the injury incurred on January 31, 1961.

We agree with petitioner.

The result of the 1961 injury to applicant was a substantial restriction of his work ability. The heart attack of 1963 made it impossible for him to carry on any longer as the driver of a cement mixing truck. Strenuous physical effort on the part of the applicant was proscribed. Light work is permitted.

At the time of the hearing herein, applicant had for some time been employed solely as a driver of a one-ton flatbed truck for a construction firm. He was also able to engage in light work around the home, to drive his own car, and engage in moderate exercise.

It is apparent that applicant's injuries have not entirely precluded his engaging in his calling as a truck driver; however, it has placed him in a category where he cannot engage in the operation of certain types of trucks. ██ In other words, his ability to compete has been decreased from what it was immediately prior to the second injury.

Under such circumstances, Labor Code, section 4750, comes into operation. This section provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

The case of *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902] (hereinafter referred to as *Hutchinson*) sets forth the principles to be applied in this case.

In the *Hutchinson* case, the applicant first suffered an injury to his neck resulting in a rating of 26 per cent; then he injured his lower back, resulting in an additional rating of 26 per cent. The rating expert testified that the two injuries considered together would result in a rating less than 52 per cent. Nonetheless, the Industrial Accident Commission —proceeding as it has in the present case—did not reduce the second rating. It followed its rule that when separate parts of the body are injured in separate accidents, each injury must be rated separately and the combined disability is immaterial. Our Supreme Court, applying section 4750, annulled the award and remanded the case. The opinion states: "When there has been no loss of a member of the body or loss of its function, it is necessary as a prerequisite to compensation that the injury result in a decrease in earning capacity or the ability to compete in the open labor market. If a subsequent injury does not have such an effect it should not be compensable. Stated another way, the disability resulting from a subsequent injury should be compensable only to the extent that it can be said that the employee's earning capacity or ability to compete has been decreased from what it was immediately prior to the second injury. The computation of this figure cannot be determined by a mechanical application of a method of apportionment based upon whether the injury occurs to the same anatomical part of the body. It must come from a consideration of the nature of the disability caused by the injury. If successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 per cent assigned to 'total' disability. (See *Smith* v. *Industrial Acc. Com., supra,* 44 Cal.2d 364, 367 [282 P.2d 64].) But if the subsequent injury, even if to a different part of the body, does not alter the earning capacity or ability to compete in the labor market it is not compensable. And if it does alter these factors, it should be compensable only to the extent of the alteration. (See *State Comp. Ins. Fund.* v.

*Industrial Acc. Com.*, 56 Cal.2d 681, 686 [16 Cal.Rptr. 359, 365 P.2d 415].) Of course, when separate parts of the body are injured, the resulting disabilities will usually be separate and independent and thus fall within the rule of the *Pacific Gas* case [*Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.* (1954) 126 Cal.App.2d 554 (272 P.2d 818)]. But this is not necessarily true. In the *Gardner* case [*Gardner* v. *Industrial Acc. Com.* (1938) 28 Cal.App.2d 682 (83 P.2d 295)], the leg amputation did not alter the earning capacity or ability to compete of the employee as a sound person, but did so only to the extent of the difference between an employee with an already impaired left foot and one without the use of the left leg. The two disabilities were not separate and independent. They overlapped. In *Pacific Gas,* on the other hand, the subsequent injury produced a quite independent disability and therefore was properly compensable as if the employee was totally sound at the time of the second injury.

"In the instant case, Hutchinson, after the first injury, was disabled in that the amount of climbing, overhead work and lifting work he could do had been limited. But the second injury, in a major degree, resulted in the same limitation; a restriction on the amount of heavy work he could do. To the extent that the factors of disability due to both injuries overlapped, that is, to the extent that the second injury did not further reduce his earning capacity nor his ability to compete in the open labor market, he should not be compensated twice any more than in *Gardner* the loss of the left leg could be considered separately from the fact that the use of the leg was already partially restricted and for which restriction compensation had already been awarded." (Pp. 52-54.)

(For a discussion of the apportionment problem and Labor Code, section 4750, see 53 California Law Review 279, at page 288 et seq.)

The Industrial Accident Commission seeks to avoid the application of the *Hutchinson* case on the following grounds:

(1) The two disabilities in *Hutchinson* were rated under the same schedule for rating permanent disability (disability number 18.1, Schedule for Rating Permanent Disabilities), whereas here different disabilities are involved, i.e., different disability numbers)—the first disability was rated under schedule numbers 18.1, supra, and 16.811 (loss

of grasping power), but the subsequent heart disability was rated under schedule number 6.3. ■ This is the type of artificial distinction which was condemned in *Hutchinson*. Even though the schedule unites neck, spine and pelvis in one category, but not heart conditions, this is no basis whatsoever on which to avoid the *Hutchinson* rule. It is clear that whether the disabilities overlap is to be determined not mechanically, but by the "nature of the disability caused by the injury."

(2) In *Hutchinson*, there was no evidence of rehabilitation from the first disability. Dealing with this, the court said (59 Cal.2d at p. 56): "It can, of course, be argued that if the injuries sustained in the first accident heal or improve, then there will remain at least a 26 per cent disability caused by the subsequent injury for which no compensation has been paid. This may be so. But this is a factor that should be found as a fact, based on evidence. It was not here found." The commission claims that it *was* here found. Permanent disability from the first injury began on April 10, 1961. ■ The heart attack was not until two and one-half years later, on October 29, 1963. During this entire period, applicant was doing the same work as before—driving a cement truck. These facts support "the referee's implied finding that as of the date of the heart attack the prior injury imposed no limitation upon applicant's earning power or ability to compete..." But the facts remain that he continued to wear a corset; he could not carry the sacks of cement alone: and he still suffered from the loss of grasping power. These are factors showing a loss of ability to compete. In view of them, an "implied finding" is not warranted. ■ The fact that applicant was gainfully employed at the same job does not mean he has not lost earning power or ability to compete; one does not have to be out of work to receive permanent disability indemnity. (*Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364, 367 [282 P.2d 64].)

(3) The petitioner in *Hutchinson* called and cross-examined the rating expert, and hence met its burden of producing some evidence of overlapping disability. The present petitioner has done nothing in this regard. However, the issue is not the rating itself, but whether factors of disability from the previous injury should have been submitted to the rating expert. (See discussion, Workmen's Compensation (Cont. Ed. Bar), § 17.27.) The referee did not submit such factors to the rating expert. ■ Furthermore, cross-examination

of the rating specialist is not a prerequisite to the filing of a petition for reconsideration (Cont. Ed. Bar, *supra*).

The Industrial Accident Commission has hinted at, but never really discussed, the ground on which the award must stand or fall. ▮ If the disabilities do not overlap, i.e., if they "produce separate and independent disabilities," the prior disability is properly disregarded (*Hutchinson, supra,* 59 Cal.2d at p. 53). ▮ However, the record discloses that the disabilities noted here are not separate and independent, i.e., the rating for the heart disability was based upon a request indicating that any gainful work requiring *strenuous physical effort was precluded,* and the rating for the prior disability was based upon a request showing loss of rotation and flexion of the neck and back, loss of grip, and the suffering of "*severe pain in low back upon much heavy lifting* or upon continued or prolonged repetitive bending" (italics added). (Later the referee reduced the pain factor by denominating it "moderate.") Thus overlap has been demonstrated just as it was in *Hutchinson*: "In the instant case, Hutchinson, after the first injury, was disabled in that the amount of climbing, overhead work and lifting work he could do had been limited. But the second injury, in a major degree, resulted in the same limitation; a restriction on the amount of heavy work he could do. To the extent that the factors of disability due to both injuries overlapped, that is, to the extent that the second injury did not further reduce his earning capacity nor his ability to compete in the open labor market, he should not be compensated twice...." (59 Cal.2d at p. 53.)

Nonetheless, the referee in his report accompanying his award stated, "There is no direct evidence in the record that the disability in this case and the disability which was rated in Claim No. 195-203 are so-called 'overlapping' disabilities. The Referee believes that they are distinct disabilities to separate parts or members and that no apportionment of permanent disability in this case should be made." The same referee said upon the petition for reconsideration, "The Referee considers himself to be bound by the rulings of Panel One concerning overlapping disabilities. As he understands these rulings, Panel One has held that injuries to distinct and separate members of the body are not overlapping disabilities." The rule of the panel was specially condemned in *Hutchinson* (59 Cal.2d at p. 51). We

are convinced that a referee cannot find as a matter of fact that there is no overlap in face of his own submission of an element used to support the rating which on its face overlaps a factor used in the previous rating. The failure to inform the rating expert of the prior disability and its present effect amounts to a rule that a heart injury resulting in restriction to light activity can never result in an overlap with a prior disability which also resulted in, and continues to result in, restricted activity. As we have noted, the law does not support such a rule.

The award is annulled, and the case remanded to the Industrial Accident Commission, with instructions to determine the extent of the permanent disability to Tarantino caused by the second accident, in accordance with the rules set forth in the *Hutchinson* case.

Agee, J., and Taylor, J., concurred.