[Civ. No. 43317. Second Dist., Div. Five. July 2, 1974.]

SUBSEQUENT INJURIES FUND, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
WILBUR D. ROYSTER, Respondents.

■■■■■■■■■■

## COUNSEL

Evelle J. Younger, Attorney General, and James R. Schwartz, Deputy Attorney General, for Petitioner.

Louis R. Stein for Respondents.

## OPINION

**STEPHENS, J.**—The Subsequent Injuries Fund seeks review and annulment of an award of the Workmen's Compensation Appeals Board which found real party in interest (Wilbur D. Royster, hereinafter "applicant") to be 100 percent permanently disabled, attributing 69½ percent to an industrial injury during the period September 1, 1967 through March 30, 1971 and 30½ percent to a preexisting injury to the back and heart which had previously been awarded to applicant.

### The Facts

On January 21, 1971, the board found that applicant had sustained an industrially caused, cumulative injury to his heart and back during March 1, 1947 through February 28, 1967, and awarded him a partial permanent disability rating of 30½ percent (case No. 67 LA 309-120). Applicant returned to work and later in that year he suffered a major heart attack, for which he claimed cumulative heart injury for the period 1967-1971. On April 24, 1972 (case No. 71 VN 31861), the referee ruled that applicant was at that time 100 percent disabled and that "since applicant had a previous disability of a similar nature to the extent of 30½ %, it is found that 69½ % of the 100% is attributable to this injury." On July 6, 1972, applicant filed a claim for Subsequent Injuries Fund benefits based on the two awards. On August 14, 1973, the board awarded applicant a life pension based on 100 percent permanent disability. On August 28, 1973, the Subsequent Injuries Fund petitioned the board for reconsideration of the August 14 award and to reopen, contending that

■■■■■■

"applicant's heart disability as the result of the cumulative injury was greater than 69½ % because the referee improperly subtracted both the heart *and back* disability attributable to Case No. 67 LA 309-120 from the overall 100% heart disability, where he should have only subtracted the extent of the prior *heart* disability." The Fund further contended that the referee improperly denied petitioner an opportunity to present evidence. The Fund's petition was denied by the board on October 26, 1973.

The Fund contends that "the referee used an improper method of determining the industrial injury" and that "even if the formula used by the referee were proper, the evidence would not support the finding of 69½ % industrial disability" for the second injury.

The mathematical formula governing benefit payments to applicant clarifies the reason the Fund is seeking review. If the initial award to applicant (67 LA 390-120) is apportioned between the heart and the back injury, the subsequent rating for the second heart injury (71 VN 31861) could be proportionately increased. (See *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)*, 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902].) Since applicant's second injury was rated at 69½ percent, any percentage-increase in rated disability due to the subsequent injury would lengthen the statutory period for which applicant is entitled to "permanent disability" weekly payments from the employer's carrier (Lab. Code, § 4658).[1] The benefit to the Fund arises since, while it makes life-pension

---

[1]Labor Code section 4658 provides: "If the injury causes permanent disability, the percentage of disability to total disability shall be determined, and the disability payment computed and allowed, according to subdivision (a). However, in no event shall the disability payment allowed be less than the disability payment computed according to subdivision (b).

"(a)

| Column 1—Range of percentage of permanent disability incurred: | Column 2 — Number of weeks for which two-thirds of average weekly earnings allowed for each 1 percent of permanent disability within percentage range: |
|---|---|
| Under 10 | 3 |
| 10–19.75 | 4 |
| 20–29.75 | 5 |
| 30–49.75 | 6 |
| 50–69.75 | 7 |
| 70–99.75 | 8 |

"The number of weeks for which payments shall be allowed set forth in column 2 above based upon the percentage of permanent disability set forth in column 1 above

payments (to which applicant is entitled because his combined disability exceeds 70 percent (Lab. Code, § 4751; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, § 14.05)), it does not make "permanent disability" payments. Thus, every "permanent disability" payment made delays the eventual day when life-pension benefits begin, to the Fund's economic benefit.[2]

We note initially that the Fund does not contend that applicant is not entitled to a life pension; nor is there a question raised as to the amount

---

shall be cumulative, and the number of benefit weeks shall increase with the severity of the disability. The following schedule is illustrative of the computation of the number of benefit weeks:

| Column 1—Percentage of permanent disability incurred: | Column 2—Cumulative number of benefit weeks: |
|---|---|
| 5 | 15.00 |
| 10 | 30.25 |
| 15 | 50.25 |
| 20 | 70.50 |
| 25 | 95.50 |
| 30 | 120.75 |
| 35 | 150.75 |
| 40 | 180.75 |
| 45 | 210.75 |
| 50 | 241.00 |
| 55 | 276.00 |
| 60 | 311.00 |
| 65 | 346.00 |
| 70 | 381.25 |
| 75 | 421.25 |
| 80 | 461.25 |
| 85 | 501.25 |
| 90 | 541.25 |
| 95 | 581.25 |
| 100 | for life |

"(b) Two-thirds of the average weekly earnings for four weeks for each 1 percent of disability, where, for the purposes of this subdivision, the average weekly earnings shall be taken at not more than seventy-eight dollars and seventy-five cents ($78.75)."

[2]The difference to applicant between either form of benefit payment is minimal. Suppose that 15¼ percent was attributable to the back injury (as applicant contends—no specific figures are urged by the Fund). This would increase the 69½ percent by 15¼ percent, or 61 additional permanent disability weekly payments (1 percent entails 4 weekly payments) at $52.50. The weekly life pension payment of $48.46 would then not begin until the expiration of the additional 61-week period. The difference to applicant is the sum of $246.44. The difference to the Fund is much greater (at least $2,956.06, plus some credit against the county for its responsibility for the life pension).

of each benefit payment under the life pension. The only real issue on review is when the Fund's obligation to make the life pension benefit payments begins.

The issues as stated in the Fund's petition and brief seem to imply that the Fund is seeking a shifting of liability from itself to the employer (who is not a party to these proceedings). Such a shifting of liability may not be accomplished.

Where an employee has permanent disability from an industrial injury which, in conjunction with a preexisting disability (either industrial or nonindustrial), produces a combined disability of 70 percent or more of total disability, he may also apply for payment of the difference[3] between the rating for his industrial injury and the total disability percentage.[4] These benefits are made payable by law out of a special legislative appropriation administered by the Fund.

According to the rules of the Workmen's Compensation Appeals Board, whenever it appears likely that benefits may be payable from the Fund in addition to normal permanent disability benefits, a written application for such benefits should be filed. This allows the Fund to be joined in the proceedings. Where the Fund is not joined, it is entitled to litigate the question of its own liability for life pension benefit payments. (*Brown* v. *Workmen's Comp. Appeals Bd.*, 20 Cal.App.3d 903 [98 Cal.Rptr. 96].) However, the Fund may not, by a subsequent proceeding, attempt to increase the obligation of a third party who has already had its rights and liabilities adjudicated before the board. In the instant controversy, the employer's responsibility has already been determined. The time period within which an appeal could be taken from that decision has long since expired. If the board has made an error with respect to the employer's obligation under the applicant's claim, the Fund is in no position to complain about it. Insofar as the employer's obligation is concerned, the Fund stands in the shoes of the applicant and may not resurrect the applicant's finalized claim in an attempt to avoid its own obligation by transferring it to a third party. However, the Fund is not bound by the prior adjudication of the employer's liability relative to the determination of its *own* obligation to make life pension benefit payments when it has not been joined. (See

---

[3]The employer is only liable to the extent that the second injury is industrially caused. (*State Compensation Ins. Fund* v. *Industrial Acc. Com., supra,* 59 Cal.2d 45.)

[4]Provided that certain other prerequisites (not here pertinent) are met. (See Lab. Code, § 4751.)

*Brown* v. *Workmen's Comp. App. Bd., supra.*) Where the employer is liable for all or a portion of the disability, the Fund is not also liable. (*Moyer* v. *Workmen's Comp. Appeals Bd.,* 24 Cal.App.3d 650, 656 [100 Cal.Rptr. 540].) By logical extension, the Fund should not be obligated to begin making life pension benefit payments prior to the date the employer's liability should properly cease. Thus, while the Fund may not relitigate the issue of the employer's liability in an attempt to increase his obligation, it may litigate the question of the employer's liability so as to properly determine the extent of its obligation to the applicant. Any danger that the applicant may find himself faced with conflicting decisions with respect to benefits to which he is entitled can be obviated by his joining the Fund when he institutes his claim for permanent disability benefits if it appears likely that benefits may also be payable from the Subsequent Injuries Fund.

For purposes of reaching the merits of the Fund's contentions, we construe its petition as solely requesting relief within the allowable confines hereinabove set forth.

The Fund's first assignment of error is that the board used an improper method in determining the percentage of total disability which was attributable to the second injury. In determining the extent of applicant's disability, the board concluded that due to the cumulative heart injury, applicant was 100 percent disabled. In order to ascertain what percentage of applicant's total disability was attributable to the second injury (71 VN 31861), the board deducted the previous partial permanent disability award of 30½ percent, arriving at its award of 69½ percent. The Fund contends that this method of determining the percentage rating violated the law as set forth in *Subsequent Injuries Fund* v. *Ind. Acc. Com. (Harris),* 44 Cal.2d 604 [283 P.2d 1039] and resulted in a windfall benefit to the insurance carrier.

The rule governing the employer's liability in a case of successive injuries such as those involved in the instant case is set forth in *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson), supra,* 59 Cal. 2d 45, 53, where the court stated: ". . . . Stated another way, the disability resulting from a subsequent injury should be compensable only to the extent that it can be said that the employee's earning capacity or ability to compete [in the open labor market] has been decreased from what it was immediately prior to the second injury. . . . If successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 percent assigned to

'total' disability. [Citation.] But if the subsequent injury, even if to a different part of the body, does not alter the earning capacity or ability to compete in the labor market it is not compensable. And if it does alter these factors, it should be compensable only to the extent of the alteration. [Citation.]"

 Thus, under the facts of this case, the formula used by the board to apportion the amount of disability attributable to the second injury was not erroneous. The *Harris* case which dealt with a preexisting disease which was "lighted up" by a single trauma (Lab. Code, § 4663) is not controlling. *Harris* was specifically distinguished in *Hutchinson,* where it was noted that the proper method of apportionment to be used in cases of successive injuries of the same nature is to determine the aggregate amount of the disability attributable to the injuries and then subtract the previously rated and compensated disability to determine the liability for the second injury. That is what the board did in the instant case. *Hutchinson* cites with approval *State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 56 Cal.2d 681 [16 Cal.Rptr. 359, 365 P.2d 415], stating (at p. 54): ". . . . There an employee was suffering from heart insufficiency rated at 43½ percent permanent disability. He later sustained an industrially connected heart attack which was found to render him 100 percent disabled. The court said, at page 686 of 56 Cal.2d, that 'The . . . heart attack could not have caused 100 percent disability since the heart was already 43½ percent disabled at the time of the . . . attack. It was therefore erroneous for the commission to fail to deduct the earlier 43½ percent disability . . .' when assessing the employer's liability for the heart attack. Similarly, in the instant case the second injury could not have caused a full 26 percent disability manifested by a restriction in the ability to do heavy lifting when that disability was, at least to some extent, already present." As is apparent, the cited case is on all fours with the instant one and establishes that there is no merit to the Fund's contention.

 The Fund's second contention is that the board's finding of 69½ percent disability is not supported by the evidence.

 It is an elementary rule of appellate procedure that a decision of the board will be reviewed on the basis of whether the record contains substantial evidence to support the decision. (*LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635-637 [83 Cal.Rptr. 208, 463 P.2d 432]; 1 Hanna, *supra,* § 10.08[2]. In the instant case, we are of the opinion that the record contains substantial evidence to support the determination that the initial 30½ percent disability was due to partial

permanent heart disability. On the first claim, the independent medical examiner, Doctor Goldman, examined applicant with respect to the heart injury. After examining applicant and finding evidence of heart disease with some infarction, Goldman stated in his report: "[Applicant] should not do any heavy lifting or be exposed to further tension or strain. He can serve in a supervisory capacity or at a desk job." Applicant was also referred to an independent medical examiner, Doctor Paschall, for a diagnosis of the degree of disability attributable to the back injury. Paschall stated in his report: "I would feel that the work between March 30, 1947, and February 28, 1968, including the 1955 lifting injury and the 1963 falling injury should be considered as having contributed about 25% of the patient's present condition. The patient's present permanent partial disability factors are subjective and objective and are minimal. He should be advised to avoid repeated bending and lifting and also advised to avoid lifting objects heavier than fifty pounds. He should be advised to try to avoid lifting these objects also . . .

"The natural aging process and the degenerative arthritic process accounts for seventy-five percent of the patient's present permanent partial disability factors."

The recommended permanent disability rating incorporated the recommendation of Goldman that applicant is "precluded from heavy lifting or exposure to tension or strain." Under the facts it is clear that the recommended rating was intended to encompass applicant's heart injury. The injury to applicant's back was subsumed within the rating. (See *Bauer* v. *County of Los Angeles,* 34 Cal. Comp. Cases 594, 597.) The contention that the board's decision was not supported by substantial evidence is erroneous.

The alternative writ is discharged and the petition to annul the order of the board in case No. 71 VN 31861 is denied.

Kaus, P. J., and Hastings, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 28, 1974.