[S.F. No. 23264. In Bank. Feb. 2. 1976.]

JOHN FUENTES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, PACIFIC
STATES STEEL CORPORATION et al., Respondents.

**COUNSEL**

Levy, Van Bourg & Hackler, Van Bourg, Allen, Weinberg, Williams & Roger and Barry J. Williams for Petitioner.

Barry Satzman as Amicus Curiae on behalf of Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen, Robert A. LaPorta, Hanna & Brophy, Hogen J. Kallemeyn, Warren Hanna, Mullen & Filippi, Charles F. Lee and Adolph J. Capurro for Respondents.

**OPINION**

**RICHARDSON, J.**—Petitioner seeks review of an award by the Workers' Compensation Appeals Board (the Board). We consider and resolve certain conflicts which have arisen over the appropriate method of determining the extent of an employer's liability for an employee's industrial injury resulting in permanent disability in those cases in which a portion of the over-all disability is attributable to a preexisting injury. In particular, we are here concerned with the interpretation and effect of amendments to Labor Code section 4658 which became effective April 1, 1972. (Unless otherwise indicated, all references are to the Labor Code.)

The facts are not disputed. While working for a number of employers over a 32-year period (1940-1972) petitioner sustained cumulative injury

to his lungs resulting in an over-all permanent disability rating of 58 percent. One-half of this disability was found by the referee to be industrially related, one-quarter (25 percent) was the result of cigarette smoking, and the final one-quarter (25 percent) due to nonindustrial causes. Of the 25 percent attributable to cigarette smoking, one-third (8.33 percent of over-all disability) was found to have been incurred in the course of "on-the-job" smoking and is accordingly compensable. Thus, of the total 58 percent disability, approximately 33.75 percent (58 percent × 58.33 percent) was industrially related. The remaining 24.25 percent was attributable to other factors, and being nonindustrial in origin is not compensable. (§ 3600.) There is no disagreement among the parties as to the accuracy of these findings.

Under former law, the compensation due petitioner in such a case was easily calculated. Section 4658, as it read prior to April 1, 1972, provided that, for each percentage point of permanent disability which was of industrial origin, an injured worker was entitled to four weeks of compensation. (Stats. 1949, ch. 1583, p. 2833.) In petitioner's situation, this would have meant an award of 135 weeks (4 × 33.75 percent). However, in 1971 the Legislature amended section 4658, establishing a different method for computing the number of weekly benefits to be awarded. Under the new statute, which is applicable to the instant case, the number of weekly benefits increases exponentially in proportion to the percentage of the disability. The following table of selected comparisons utilized by the Court of Appeal illustrates the effect of this change.

| Percentage of worker's permanent disability | Number of weekly benefits under § 4658, 1949-1972 | Number of weekly benefits under § 4658 as effective 1972 |
|---|---|---|
| 10 | 40 | 30.25 |
| 24.25 | 97 | 91.75 |
| 33.75 | 135 | 143.25 |
| 40 | 160 | 180.75 |
| 50 | 200 | 241 |
| 58 | 236 | 297 |
| 70 | 280 | 381.25 |
| 80 | 320 | 461.25 |
| 90 | 360 | 541.25 |

Difficulties in applying the amended law have arisen in cases where, as here, only a portion of the overall disability has industrial origins. In

such circumstances, the award is affected by the force of section 4750, which statute reads in full: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter ·shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." The frequently expressed policy behind this section is that it will encourage employers to hire the handicapped.

The parties have suggested that in computing the number of weekly benefits to which petitioner is entitled under the new section 4658 there are three possible methods which may be utilized, described for the sake of convenience, as formulas A, B, and C. Under former section 4658 the compensation was the same regardless of which formula was applied. However, as a result of the 1971 amendments substantial differences ensue in the amount awarded a claimant depending on which formula is utilized.

Under formula A, adopted by the Board in petitioner's case, there is subtracted from the total disability that portion which is nonindustrial, the remainder being the amount of compensable disability. Thus in the matter before us 24.25 percent, representing nonindustrial origin, is deducted from the 58 percent total disability with a net compensable disability of 33.75 percent. Under the schedule established by section 4658, subdivision (a), this entitled petitioner to 143.25 weekly benefits which may be converted in terms of dollars to an award of $10,027.50.

Formula B contemplates, first, determination of the number of statutory weekly benefits authorized under section 4658 for a 58 percent disability, namely, 297. This figure is then multiplied by the percentage of industrially related disability (58.33). The product is 173.25 weeks, which results in a total monetary award of $12,127.50.

Petitioner urges adoption of formula C, under which the 58 percent permanent disability is converted into its monetary equivalent of $20,790. From this figure is subtracted the dollar value ($6,422.50) of the 24.25 percent of the noncompensable, nonindustrial disability. The result is an award of $14,367.50, or the equivalent of 205.25 weekly benefits.

 We have concluded that formula A is the proper one, and accordingly affirm the decision of the Board.

In our view this result is required by the express and unequivocal language of section 4750, *supra*. As we have previously noted, the purpose of that statute is to encourage employers to hire physically handicapped persons. The Legislature recognized that employers might refrain from engaging the services of the handicapped if, upon subsequent injury, an employer was required to compensate the employee for an aggregate disability which included a previous injury. (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 173 [93 Cal.Rptr. 15, 480 P.2d 967]; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45, 49 [27 Cal.Rptr. 702, 377 P.2d 902].) In enacting section 4750, the Legislature has expressed a clear intent that the liability of one who employs a previously disabled worker shall, in the event of a subsequent injury, be limited to that percentage of the over-all disability resulting from the later harm considered alone and as if it were the original injury. The principle has been expressed that ". . . [I]ndustry is to be charged only for those injuries arising out of and in the course of employment and only for the result of that particular injury when considered by itself and not in conjunction with or in relation to a previous injury." (*Gardner* v. *Industrial Acc. Com.* (1938) 28 Cal.App.2d 682, 684 [83 P.2d 295].)

Bearing in mind the beneficent public policy which prompted adoption of section 4750, as affirmed in *Hegglin* and *Hutchinson*, we conclude that only formula A results in an award complying with the provisions of section 4750. Petitioner has suffered a compensable disability of 33.75 percent. Under formula B, however, he would receive an award which, under the rates provided for in section 4658, subdivision (a), is equivalent to the amount given for a disability carrying a rating of approximately 39 percent. Application of formula C results in a recovery which is the same as that authorized by section 4658, subdivision (a), for a rating of 44 percent. This arithmetic leads to the inevitable conclusion that neither method B nor C can be reconciled with the mandate of section 4750 that the compensation for a subsequent injury be computed "as though no prior disability or impairment had existed." On the contrary, B and C result in an enhancement of the benefits due to the existence of a preexisting physical impairment.

The application of either formula B or C would require us to discern an intent on the part of the Legislature that the 1971 amendments to

section 4658 function so as to effect a repeal or at least a partial repeal of section 4750. Generally, we will not presume the existence of such an intent in the absence of an express declaration. (*Ramos* v. *City of Santa Clara* (1973) 35 Cal.App.3d 93, 97 [110 Cal.Rptr. 485].) ■ Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws. (*In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980].) Furthermore, we must assume that when passing a statute the Legislature is aware of existing related laws and intends to maintain a consistent body of rules. (*Estate of Simpson* (1954) 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *American Friends Service Committee* v. *Procunier* (1973) 33 Cal.App.3d 252 [109 Cal.Rptr. 22], hg. den.) In *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234], we spoke ". . . of the policy that it should not 'be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' "

■ Petitioner contends that there is an irreconcilable conflict between the legislative intent to increase workers' compensation benefits as manifested by section 4658, on the one hand, and the limiting effect of section 4750 on the other. This conflict, it is argued, invokes the familiar rules of statutory construction requiring that we give effect to the more recently enacted law. (See *City of Petaluma* v. *Pac. Tel. & Tel. Co.* (1955) 44 Cal.2d 284, 288 [282 P.2d 43]; *Rees* v. *Layton* (1970) 6 Cal.App.3d 815, 821 [86 Cal.Rptr. 268].) ■ Whenever possible, however, we must reconcile statutes and seek to avoid interpretations which would require us to ignore one statute or the other (see *In re White, supra,* 1 Cal.3d 207 at p. 212), and the rule giving precedence to the later statute is invoked only if the two cannot be harmonized. (*Rees* v. *Layton, supra.*) ■ This is not such a case.

Section 4658 may be considered as a general provision establishing the amount of compensation benefits for a permanent disability, and section 4750 may be viewed as a specific rule limiting the benefits available in those cases where the employee has a preexisting permanent disability and thereafter sustains a further permanent injury. When so construed the statutes in question are complementary, not contradictory, and function together quite harmoniously, thus, serving the twin goals of providing proportionately greater benefits for more serious injuries while at the same time protecting employers from bearing a disproportionate share of a financial burden resulting from cumulative injuries. Even

assuming, however, that a conflict exists, an equally familiar rule of statutory construction requires the more specific section 4750 to prevail over section 4658, the more general law applicable to the same subject (*In re James M.* (1973) 9 Cal.3d 517, 522 [108 Cal.Rptr. 89, 510 P.2d 33]; *Simpson* v. *Cranston* (1961) 56 Cal.2d 63, 69 [13 Cal.Rptr. 668, 362 P.2d 492]), and petitioner's recovery must be limited in accord with the provisions of section 4750.

■ In urging the adoption of formula C, petitioner relies heavily on Labor Code section 3202, the so-called "liberality rule," which reads: "The provisions of Division 4 and Division 5 of this code shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." However, the policy underlying section 3202 cannot supplant the intent of the Legislature as expressed in a particular statute. (*Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409, 413 [289 P.2d 229].) Where, as here, the relevant statutes may be reconciled, their provisions cannot be disregarded. This is so, as we said 40 years ago, even though the particular statutory language "is contrary to the basic policy of the statute." (See *Earl Ranch, Ltd.* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 767, 769 [53 P.2d 154].) The fact that the workers' compensation laws are to be liberally construed ". . . does not mean that the legislative mandate of section 4750 is to be ignored." (*Wolski* v. *Industrial Acc. Com.* (1945) 70 Cal.App.2d 427, 431-432 [161 P.2d 283].)

As petitioner correctly observes, under formula A adopted by the Board a worker who suffers a single injury resulting in, for example, a disability rating of 50 percent, will receive greater benefits than one who sustains two successive injuries each of which causes a permanent disability of 25 percent when considered alone. This result, however, is neither unjust nor unfair, petitioner's arguments to the contrary notwithstanding. Rather, it is a consequence of the recent amendments to section 4658 and is consistent with the previously noted policy of encouraging employers to hire the disabled. There being no evidence to the contrary, this court must assume that such a result was contemplated by the Legislature.

By applying formula A we give effect, as we must to the express and unambiguous language of section 4750. It follows, accordingly, that the Board properly computed the benefits due petitioner and the award is affirmed.

Wright, C. J., McComb, J., Sullivan, J., and Clark, J., concurred.

**MOSK, J.**—I dissent.

Although only one physical impairment was involved here, and the permanent disability is 58 percent and not the 70 percent required to invoke provisions of the Subsequent Injuries Fund (Lab. Code, §§ 4751-4755), the principle established by the majority undoubtedly would, in an appropriate subsequent injuries case, result in shifting an added portion of the burden of compensation from the employer's insurance carrier to the taxpayers of the state. This we should be reluctant to do unless compelled by statute, and I find the statutory construction employed by the majority to be far short of compelling.

Instead of solving the instant problem by using Labor Code sections 4663 and 4750 as the start and finish of our analysis, the method adopted by the board and the majority, it would seem more logical, as it did to the referee, to refer primarily to the Legislature's *latest* word on the subject: the 1972 and 1974 amendments to section 4658. We should give effect to the most recent legislative intent, except as it may be prohibited by prior unrepealed law.

When that approach is used, I reach the same conclusion as that of Acting Presiding Justice Sims of the Court of Appeal. Thus I adopt his views on this case as my dissent, omitting for editorial convenience his initial paragraph.

Reference to the amended section reveals that the Legislature intended that a person who suffers a disability of 58 percent should receive compensation of $20,790 payable at the rate of $70 per week for 297 weeks. If a nonsmoker suffered from solely industrial causes the same lung injuries which were found to have permanently disabled the petitioner as of May 10, 1972, the revised compensation in the foregoing amount represents the Legislature's view of what would be fair compensation. In the instant case it has been determined by stipulation and by rulings on the stipulated facts that of the total permanent disability rated at 58 percent, 24.17 (rounded to 24.25) percent was not, and 33.83 (rounded to 33.75) percent was, industrially caused. It, therefore, would appear reasonable to conclude that of the total indemnity contemplated by the Legislature, that sum should be paid which is the equivalent of the percentage of disability which was industrially covered, or 58.33 percent (33.83/58.00). This produces compensation of $12,126.81, or a sum the equivalent of the $12,127.50 which the referee awarded by finding permanent disability of 38.75 percent which called for 173.25 weekly payments of $70, for a total of $12,127.50.

The respondents contend that it is improper to compute the compensation in the foregoing manner because traditionally it has been the practice to deduct the percentage of nonindustrially related permanent disability from the total disability and then compute the compensation for the remaining percentage of permanent disability.[1] That practice worked equitably under a system of compensation which merely progressed arithmetically with the percentage of disability. The fact that it is not equitable under a system where the rate of compensation increases with the severity of the disability is sufficient to warrant its rejection under the new rates. To apply the pre-1972 formula would deprive the employee of a proportion of the compensation which the Legislature intended for a worker suffering permanent disability to the total extent of that incurred by petitioner. To award the top bracket as all industrially caused, as contended for by the petitioner, would unduly enrich him at the expense of the employer or its insurer. The solution selected by the referee does justice to both.

It is contended that the provisions of sections 4663 and 4750 of the Labor Code require that the percentage of nonindustrial related disability be first subtracted from the percentages of total permanent disability before computing the award. These sections[2] refer to "compensation." It may be noted that "the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury" as referred to in section 4663, is, as we have seen above, 58.33

---

[1] See *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45, 50-54 [27 Cal.Rptr. 702, 377 P.2d 902]; *Subsequent Injuries Fund* v. *Ind. Acc. Com. (Harris)* (1955) 44 Cal.2d 604, 609 [283 P.2d 1039]; *Edson* v. *Industrial Acc. Com.* (1928) 206 Cal. 134, 139-140 [273 P. 572]; *Ford Motor Co.* v. *Industrial Acc. Com.* (1927) 202 Cal. 459, 463-464 [262 P. 466]; *Subsequent Injuries Fund* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 403, 409 [115 Cal.Rptr. 204]; *Avila* v. *Workmen's Comp. App. Bd.* (1970) 14 Cal.App.3d 33, 39 [91 Cal.Rptr. 853]; *Truck Ins. Exch.* v. *Industrial Acc. Com.* (1965) 235 Cal.App.2d 207, 209-211 [45 Cal.Rptr. 178]; *Pacific Gas & Elec. Co.* v. *Ind. Acc. Com.* (1954) 126 Cal.App.2d 554, 556-557 [272 P.2d 818]; *Wolski* v. *Industrial Acc. Com.* (1945) 70 Cal.App.2d 427, 428-432 [161 P.2d 283]; and *Gardner* v. *Industrial Acc. Com.* (1938) 28 Cal.App.2d 682, 684 [83 P.2d 295].

[2] Section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

percent of the 58 percent disability. The formula proposed in this opinion does not purport to give more than 58.33 percent of the compensation for a 58 percent disability under the tables as amended effective April 1, 1972.

Section 4750 has more stringent requirements. In the first paragraph it prohibits "compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment." The second paragraph reiterates, "The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." Read by themselves the provisions of this section appear to unalterably prohibit consideration of that portion of petitioner's disability which is not related to the industrially related injury for which he seeks compensation; 58.33 percent of his total 58 percent disability, or a disability of 33.83 percent, should be considered and the balance would be completely disregarded in determining the compensation.

Section 4750 relates to subsequent injuries. (See §§ 4750-4755.) Therefore it is questionable whether it is properly applicable to the situation here where only one physical impairment has resulted from compensable and noncompensable causes.[3] In any event if it is applied literally to the progressive rates it would defeat the intent of the Legislature. In this case for example it is stipulated that the compensable industrial injury occurred over a period of a little over 20 years with varying periods of exposure for each of five carriers. The carriers jointly are apparently reluctantly prepared to assume a collective liability for the compensation payable for 33.75 percent permanent disability at the revised rates in the sum of $10,027.50. Logically, however, if each had represented a separate employer who in turn had taken the employee

---

[3] See *State Compensation Ins. Fund.* v. *Industrial Acc. Com. (Hutchinson) supra,* 59 Cal.2d 45, 50-53; and *Subsequent Injuries Fund* v. *Ind. Acc. Com. (Harris) supra,* 44 Cal.2d 604, 608. In the former case, the court after reviewing the earlier case, stated: "Were section 4663 applicable it appears from the above case that the proper apportionment method then is to determine the combined disability and then assign a proportion thereof to the prior and subsequent disabilities to obtain a percentage disability attributable to each. Here, however, section 4750 applies and for the reasons discussed above this figure should be obtained by applying the method of apportionment used in the *Gardner [Gardner* v. *Industrial Acc. Com., supra,* 28 Cal.App.2d 682] case." (59 Cal.2d at p. 56; see also *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 173-174 [93 Cal.Rptr. 15, 480 P.2d 967]; and *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 402 [71 Cal.Rptr. 678, 445 P.2d 294].)

with the injury suffered under the prior exposure, the sum of each exposure would not equal the total compensation provided for an industrial injury by the graduated rates. (E.g., if the employee had worked four years for each of five employers, each could claim a liability limited to 12 weeks, or $40, and the aggregate would be $4,200, rather than $10,027.50 contemplated by the Legislature.) Of course the exposure cannot be so split by having different carriers for the same employer. The record does show, however, that after working 182 months for one employer, the petitioner worked 54 months for another, and then returned to his original employer for the 8 months preceding his injury. Should the compensation be that for 33.75 percent disability, or, if section 4750 is applied literally, the sum of several fractional parts of 33.75 percent measured by the ratios of 182/244, 54/244 and 8/244?

In applying the provisions of article 5 (§§ 4750-4755) the employee should be entitled to the full compensation provided by section 4658 when a prior industrial condition is involved. It is unnecessary to determine in these proceedings if, when there are disrelated physical impairments, the formula proposed herein should be used to apportion the total compensation, or whether, in appropriate cases the subsequent injuries fund should bear the full burden of the increased rates. (See *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson) supra,* 59 Cal.2d 45, 52; *Subsequent Injuries Fund* v. *Ind. Acc. Com. (Harris) supra,* 44 Cal.2d 604, 609-610; and *Subsequent Injuries Fund* v. *Workmen's Comp. Appeals Bd.* (1974) 40 Cal.App.3d 403, 409-410 [115 Cal.Rptr. 204].) Where, as here, there is but one impairment, the formula applied by the referee and approved herein would equitably apportion the total compensation for the total resultant permanent disability between the last employer and those who preceded him. It is concluded that the legislative intent to increase the rate of compensation can only be implemented by applying a factor determined from the proper graduated rate to the total portion of the last industrially related portion of the total permanent disability as was done by the referee.

It is contended that the construction adopted in this opinion will thwart the recognized intent of the provisions of sections 4663 and 4750 to encourage the employment of the partially disabled.[4] If one concludes

---

[1] In *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson) supra,* 59 Cal.2d 45, the court observed, "The purpose of this statutory provision [§ 4750] is to encourage the employment of physically disabled persons by assuring an employer that he will not be liable for the total combined disability present after an industrial injury, but only for that portion which is attributable to the subsequent industrial injury. [Citations.]" (59 Cal.2d at p. 49; see also *Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4

that the last employer is called upon to pay more than a fair share of the higher rate, such is the case. As pointed out in the majority opinion if the compensation equivalent to that for the percentage of the nonindustrial connected disability is taken off the bottom, as urged by petitioner, the employee would get a considerable windfall and the employer a commensurate penalty. It may also be urged that to require an employer to pay the equivalent of compensation for a rated 38.75 percent disability when the employment has only contributed the disability to a rated amount of 33.83 percent will discourage the employment of the partially disabled. The Legislature in increasing the rates on a graduated scale may be deemed to have had this effect in mind and to that extent has acted to deter the employment of the partially disabled. In return, by its latest enactment it increased the compensation for all who are disabled as a result of industrially related causes.

I would annul the decision of the appeals board and remand the case with instructions to reinstate the award made by the referee.

Tobriner, J., concurred.

Cal.3d 162. 173 [93 Cal.Rptr. 15. 480 P.2d 967]; *Jones v. Workmen's Comp. App. Bd.* (1968) 267 Cal.App.2d 302. 305 [72 Cal.Rptr. 766]; and *Wolski v. Industrial Acc. Com.*, *supra*, 70 Cal.App.2d 427, 432.)